In Re Petition of Simon G. Crosswell for a Writ of Habeas Corpus.

JANUARY 23, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Insane Persons.   Certificate of Commitment.*

Gen. Laws, cap. 82, § 11, providing that "Insane persons may be removed to and placed in said Butler Hospital or in any other curative hospital for the insane of good repute in this State, by their parents, or parent, or guardians, if any they have, and if not, by their relatives and friends; but the superintendent of said hospital shall not receive any person into his custody in such case without a certificate from two practicing physicians of good standing, known to him as such, that such person is insane," does not require that the certificate should be sworn to, or that it should be signed by physicians practicing in this State, or that they should not be officers of an institution for the care of the insane, or that the removal should be from another hospital.

(2) *Insane Persons.   Foreign and Domestic Guardians.*

In the construction of the above statute the word "guardian" should be held to include those of foreign as well as domestic appointment.

(3) *Insane Persons.   Constitutional Law.*

Gen. Laws, cap. 82, "Of restraint and cure of the insane," as amended, is not in violation of the clause of the 14th amendment to the constitution of the United States as depriving a person of life, liberty, or property without due process of law, but is a reasonable exercise of the legislative power.

PETITION for a writ of *habeas corpus* and for discharge from custody of a patient confined as insane.   Petition dismissed.

DOUGLAS, C. J.   This proceeding is a petition for a writ of *habeas corpus* and for discharge from custody of a patient confined against his will in the Butler Hospital.

Citation was issued to show cause why the writ should not issue, and a hearing was had before the court at which the petitioner was present with experienced counsel appointed by the court, and at which he and his witnesses were heard.   Subsequently briefs were filed by him and by his counsel, and by counsel representing the respondent.   All parties have been given full opportunity to present their evidence and arguments.

We find as matter of fact, upon the concurrent testimony of all the expert witnesses, that the petitioner is insane; and upon uncontradicted evidence, that his malady is in its nature progressive and that it is liable at any time, without warning, to induce in him acts of violence to himself or others.   In these circumstances it is clear that for his own good, as well as for the protection of the community, he requires restraint and medical care such as the Butler Hospital affords and for the purpose of furnishing which it is incorporated and authorized by law to receive patients.

The petitioner is a citizen of Massachusetts, and was brought from that State, and, by order of two of its trustees, admitted to the Butler Hospital upon the following certificate and application presented to the superintendent:

"CERTIFICATE AND APPLICATION.

"We hereby certify that Simon G. Crosswell, of Cambridge, Mass., is insane.

E. STANLEY ABBOTT, M. D.,
GUY G. FERNALD, M. D.,
*"Physicians."*

" Date, 29 April, 1905.

"I request that the above named insane person may be admitted as a patient into the Butler Hospital. ·

" MARY C. CROSSWELL,
*Guardian."*

The signers of the certificate were known to the superintendent, as he testifies, to be practicing physicians in good standing. It appeared, also, by their own depositions, taken on behalf of the petitioner, that they are salaried officials of the McLean Hospital, living in one of the hospital buildings and exclusively occupied in attendance upon the patients of that institution and medical practice therein. The signer of the application is sister and the nearest relative of the petitioner, and on May 13, 1903, both of his parents having died, she was appointed guardian of the petitioner, as an insane person, by the Probate Court of Middlesex county, Massachusetts, where he is domiciled.

The commitment and reception of the petitioner at the hospital were under the provisions of Gen. Laws, cap. 82, §§ 11 and 12, as follows:

"SEC. 11. Insane persons may be removed to and placed in said Butler Hospital, or in any other curative hospital for the insane of good repute in this state, managed under the supervision of a board of officers appointed under the authority of this state, by their parents, or parent, or guardians, if any they have, and if not, by their relatives and friends; but the superintendent of said hospital shall not receive any person into his custody in such case without a certificate from two practicing physicians of good standing, known to him as such, that such person is insane, and the state shall not be liable for the support of any such person.

"Sec. 12. Any person committed to the charge of any of said institutions for the insane as aforesaid, in either of the modes hereinbefore prescribed, may be lawfully received and detained in said institution by the superintendent thereof, and by his keepers and servants, until discharged in one of the modes herein provided; and neither the superintendent of such institution, his keepers or servants, nor the trustees or agents of the same, shall be liable, civilly or criminally, for receiving or detaining any person so committed or detained."

The statute does not require that the certificate mentioned in Section 11 should be sworn to or that it should be signed by physicians practicing in this State, or that they should not be officers of an institution for the care of the insane, or that the removal shall be from another hospital. These objections, urged against the validity of the certificate in the present case, have no basis in the statute. The certificate fulfilled the requirements of the law.

The power given to parents or guardians, so far as it relates to minors or wards, is only a recognition of the power which nature gives to the one class and the courts have bestowed upon the other. A parent, without this statute, may abridge the liberty of his child, may confine him in a school or workshop or hospital, may determine his place of abode or occupation, according to the parent's judgment, consulting the interests of the child, not its desire, and a guardian wherever his authority is recognized has similar rights over his ward. While it is true that an appointment by the court of any State has legal and imperative effect only within the jurisdiction of the State, it is also true that the relation of guardian and ward, when legally established by a court of competent authority having jurisdiction of the person of the ward, will generally be recognized by courts in other jurisdictions, into which the ward may be brought, who have occasion to examine questions relating to the custody of the ward's person. In such cases the court will make such order as is apparently for the benefit of the ward, and will remand him to the custody of the foreign guardian unless it sees that such control is improper. 1st Wharton Con. Laws, 3d ed. 263, 263a; *State ex rel. Raymond*

v. *Lawrence,* 86 Minn. 310; *Nugent* v. *Vetzera,* L. R. 2 Eq. 704; *Townsend* v. *Kendall,* 4 Minn. 412; *Warren* v. *Hofer,* 13 Ind. 167; *Re Parker,* 39 La. Ann. 333; *Vick* v. *Volz,* 47 La. Ann. 42; *Taylor* v. *Nichols,* 86 Tenn. 32.

(2)   Our statutes expressly confer upon non-resident guardians certain powers with regard to property of their wards which may be in this State.   Gen. Laws, cap. 196, §§ 41, 42, re-enacted in C. & P. Act, §§ 1075, 1076, construed in *Mitchell* v. *Peoples Savings Bank,* 20 R. I. 502.

We think the statute now under consideration should be held to include in the word "guardian" those of foreign as well as domestic appointment.   Many of the patients in the Butler Hospital are not citizens of Rhode Island, and we can not narrow the construction of so comprehensive a statute and construe it so as to require in many cases the appointment of a local guardian before a person needing the care of this institution could be committed to it.   But the person who signed the application in this case is the sister of the petitioner, and in either case the requirement of the law was satisfied.

The important question raised by counsel for the petitioner (3) is whether the statute itself is in violation of the clause of the fourteenth amendment to the constitution of the United States which reads: "Nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

This question came before the court in *Doyle, Petitioner,* 16 R. I. 537, upon a commitment under Pub. Stat. cap. 74, §§ 11 and 12, which are substantially the same as the sections of the General Laws, now under discussion.   The petition in that case was brought by the guardian of a patient in the Butler Hospital who had been committed thereto by his wife before the guardian was appointed, and the provisions of these sections were held to be unconstitutional.

July 23, 1889, twenty-four days after the delivery of the opinion in that case, the General Assembly, recognizing the necessity of providing for the restraint of the insane, passed

an act in amendment of said chapter 74, Pub. Laws, cap. 819, intended to obviate the objections to the validity of chapter 74.

Chapter 819 was further amended April 22, 1891, by Chapter 935, and the changes in and additions to the law as it stood at the time of the decision, which were made by these statutes, with the exception of the right of trial by jury given by chapter 935, are substantially embodied in the statutes as they stand to-day.

The objections to the validity of the statute as it was in 1889 are thus stated by the court:

"The peculiarity of our statute is this, that, if said sections 11 and 12 be constitutional, any person committed under section 11 'may be *lawfully* received and detained' under section 12 until he is discharged in one of the modes provided by said chapter 74. He can not be discharged on writ of *habeas corpus* if the sections be constitutional, since the proper function of the writ of *habeas corpus* is simply to discharge persons who are *unlawfully* restrained. The modes of discharge provided by chapter 74 are not modes which can be initiated or pursued by the person confined, but depend on the will and action of others. The persons confined may be removed from the institution where they are confined by the persons who have placed them there, or by the persons who have voluntarily become liable for the expenses of keeping them there, § 13; or the superintendent may discharge them on the application of any relative or friend, with the written approval of the visiting committee of the trustees, § 14. The only other mode is by a commission, appointed by a justice of the Supreme Court, to inquire into the question of sanity and report thereon, and by the action of the justice on such report, §§ 15, 16, 17, 18, and 29. Such commission, however, is to be appointed, not at the instance of the person confined, but only on application by some *other* person, who, unless applying under section 29, is required, before the appointment, to pay or secure the payment of the expenses, which are sometimes onerous. And, moreover, it is provided in express terms that no notice of the pendency of the inquiry before the commission shall be served on the person confined, and that such person shall not have the right to confer with

counsel, to produce evidence, or be present at the inquisition. The report of such commission may be more worthy of credit than the mere certificate of two physicians; but, inasmuch as the person confined can not himself initiate the proceeding, or take part in it in any way when initiated by another, we do not see how it relieves sections 11 and 12 of the objection that their effect is to deprive the persons confined under them of their liberty without due process of law."

None of these objections apply to the present law. The function of the writ of *habeas corpus* was enlarged to apply to such cases by Pub. Laws, cap. 819, now embodied in § 19, cap. 82, Gen. Laws, as amended by C. & P. Act, § 1112, by making it the duty of the court, upon an application for such writ "to inquire and determine as to the sanity or insanity or the necessity of restraint of the person confined, at the time such application was made." The section as now in force further provides for trying the issue to a jury in the discretion of the court, and enacts that: "If it appears upon the verdict of the jury, or if it is the opinion of the court, if the issue is not submitted to a jury, that the person so confined is not insane, or that he is not dangerous to himself or others and ought not longer to be so confined, he shall be discharged from such confinement."

The right of filing with a justice of the Supreme Court a petition for a commission to determine the question of sanity or insanity is given to the person confined, as well as to any one on his behalf, and he is also given the right to prosecute such petition in person. Gen. Laws, cap. 82, §§ 15, 16. In short, the commitment by a parent, guardian, or relative under the law considered in *Doyle, Petr.*, was final and permanent so far as concerns any right in the person confined to have a trial of the question of his sanity, while the present law gives the power to confine him on such a commitment only until he chooses to apply to the court for relief.

The argument of the petitioner's counsel goes to the length of demanding that a trial shall in all cases precede the apprehension and restraint of a person suspected to be insane. The opinion in *Doyle, Petitioner, supra*, does not approve this ex-

treme ground.  Judge Tillinghast says (p. 541): "Whether they are insane is the very question which ought to be determined before they are so completely confined as not any longer to have power to institute proceedings for their own relief, or to be heard and adduce evidence in their own behalf;" and on page 538: "We are not prepared to say that even so the sections would be void, if they were intended simply for the temporary detention, preliminary to or pending a judicial inquiry.  The right of personal liberty is to be reasonably understood, and there are many restraints which are allowed as consistent with it."

It seems to us that much popular misapprehension of this subject grows out of the feeling that constraint of a person as insane is analogous to the punishment of a criminal and carries with it some stigma; and to this may be added in some minds a repulsion to submitting one's self or one's friend to hospital treatment away from the continued supervision of family and personal friends.

But insanity is a disease, and the State has the right to treat one who has the misfortune to suffer from it, as it does one who has a contagious malady.  The exercise of this right of self-protection must be regulated by the circumstances of the case.  If it is dangerous to the community that a citizen should go at large, whether because he is liable to spread contagion or to commit some act of violence, public safety demands that he be immediately confined, either with or against his will; and the extent of his personal right can only be to test by judicial process, at a time when it may safely be done, the propriety of his restraint.

We are of the opinion that the safeguards of this right provided by the statute are ample and just.  The person confined has two methods at his command of invoking the action of the highest judicial authority, and severe penalties are imposed upon the managers and guards of the institution if they fail to bring the remedial provisions of the statute to his notice or impede his access to the remedies provided.  In addition to this, careful supervision of such institutions is provided for by citizens of character and standing, and the system of

operation is so regulated by law as to prevent abuses, or to insure the correction of them, as far as wise legislation can go.

It would serve no useful purpose in this case to compare the systems which have been adopted in other States for securing the restraint of the dangerously insane. Many of them are criticised by plaintiff's counsel as liable to the same strictures which he applies to our own. They are all attempts by different minds to protect the community by such measures as may least infringe the personal liberty of the insane person.

We think that our own system is a reasonable exercise of the legislative power and secures to the subject of its restraint all rights which the constitution of the United States guarantees to him.

This petition must be dismissed.

*Amasa M. Eaton and Simon G. Croswell,* for petitioner.
*Gardner, Pirce, & Thornley,* for Butler Hospital.