PAYNE *v.* ARKEBAUER.

4-3791

Opinion delivered March 18, 1935.

*Elmer Schoggen,* for appellant.

*Frank C. Bolton* and *Chas. B. Thweatt,* for appellee.

MEHAFFY, J. The appellant, on November 14, 1934, filed in the Pulaski Chancery Court her petition for a writ of *habeas corpus,* and stated that she was being unlawfully deprived of her liberty and confined in the State Hospital in Little Rock on the false charge that she is an insane person. She states that said false charge was made by reason of a certain commitment by the Scott County Probate Court on May 4, 1911. She attaches a copy of said order of commitment to her complaint. She alleges that the order is void, and that it was made without a charge of insanity having been filed in said court as provided by law; that she was not examined separately by two disinterested physicians as required by law, and that she was given no notice of such proceeding against her; that the probate court gave her no hearing, and, if any hearing was had, she was not present, and that such order fails to show her presence at the hearing. She states by reason of these facts the order is void on its face, and that she is not an insane person and has never been so adjudged, except in the void proceedings.

The order attached to the complaint reads as follows:

"On this 4th day of May, 1911, the matter of Martha Laura Elizabeth Payne, charged with insanity coming on before the court, on the charge made and the interrogatories taken by Drs. F. R. Duncan and L. D. Toolison on

the 3rd day of May, before J. D. McEntire, J. P., and the evidence taken by them, the court is of the opinion that the said Martha Laura Elizabeth Payne is insane, and it is ordered and adjudged by the court that the said Martha Laura Elizabeth Payne be committed to the State Hospital for Nervous Diseases at Little Rock, Arkansas, for care and treatment.

"Given under my hand this the 4th day of May, 1911."

The appellee filed the following demurrer: "Respondent demurs to the petition for writ of *habeas corpus* and says for grounds thereof that said petition does not state facts sufficient to constitute a cause of action; that said petition and the exhibits attached thereto show on their face that the order of the Scott Probate Court mentioned therein is valid, and that the petitioner is legally confined in the State Hospital for Nervous Diseases."

The case was heard on demurrer, and, after hearing, the court sustained the demurrer, petitioner declined to plead further and elected to stand on her petition. The petition was by the court dismissed for want of equity, and an appeal to this court was prayed and granted.

The appellant states in her reply brief: "The only question in this case, as made by the petition and demurrer and transcript is whether or not the order of adjudication and commitment attached as an exhibit is void on its face. If so, it is subject to collateral attack of this petition. If it is not, then it is not subject to collateral attack."

Appellant argues, first, that the petitioner was unlawfully deprived of her liberty without due process of law, in violation of both the State and Federal Constitutions. She calls attention to § 5829 of Crawford & Moses' Digest. That section is taken from the Revised Statutes of 1838, and it provides that the person charged with insanity shall be brought before the court, and, in a proceeding under this statute, it would be necessary for the court order to show that the person charged with insanity was brought before the court. Chapter 78 of Revised Statutes, from which the above section is taken, does not deal with the question of confining persons in the insane

asylum. It is devoted exclusively to the care of insane persons and appointment of guardians for them, but it makes no provision for committing persons to the insane asylum. More than 40 years after the passage of the above statute, the Legislature, in February, 1883, passed an act providing for admitting persons to the State Lunatic Asylum. The title of the act is, *"An Act to Provide for the Admission of Patients to, Their Maintenance In, and Their Discharge from, the State Lunatic Asylum."*

It will therefore be observed that each act is complete in itself, and the acts are for wholly different purposes. However, the appellant contends that this proceeding violates § 8 of article 2 of the Constitution of the State of Arkansas.

Chief Justice ENGLISH, in discussing a law which was claimed to be violative of this provision of the Constitution, said: "The same objection might be urged to all statutes which provide for arresting men accused of crimes, and depriving them of liberty, before trial and conviction. Persons charged with crimes are often denied bail, or unable to give it when allowed, and are imprisoned before trial and conviction." *Allen* v. *State,* 32 Ark. 241; *Sumpter* v. *State,* 81 Ark. 60, 98 S. W. 719; *State Medical Board* v. *McCrary,* 95 Ark. 511, 130 S. W. 544.

It has been frequently held that the provision made for appeal, so that a party could be present and secure a trial by a jury, was not violative of the Constitution. Persons may be arrested and tried in the municipal court, where they are not permitted to have a jury, but are not deprived of their liberty in violation of the constitutional provision because they have a right of appeal.

Section 35 of article 7 of the Constitution of Arkansas provides: "Appeals may be taken from judgments and orders of the probate court to the circuit court under such regulations and restrictions as may be prescribed by law."

Section 2258 of Crawford & Moses' Digest provides how appeals may be taken from the probate court. This statute was passed in 1909, and the order of the probate court complained about was in 1911. The appellant could

have appealed from the probate court to the circuit court, where she could have been present at the trial. *Watson v. Bank,* 154 Ark. 396, 243 S. W. 844; *Smith* v. *Fish,* 182 Ark. 115, 30 S. W. (2d) 223.

The Federal court quoted with approval the following from the case of *Chevannes* v. *Priestly,* 80 Iowa 316, 45 N. W. 766: "The provision of the Constitution that 'no person shall be deprived of life, liberty or property without due process of law' does not require notice to a person or his appearance before he can be lawfully adjudged insane and restrained accordingly." *Hammon* v. *Hill,* 228 Fed. 999.

Ample provision is made by our statutes for a person charged with insanity to have the question inquired into. If the appellant was sane at the time the probate court made the order, she could have appealed from the order. If there were no provisions made whereby she could have had a hearing, there would be some reason to hold the statute void.

"The State may, both for the protection of society and for the welfare of an insane person himself, place such person under restraint. Inasmuch as immediate actions may be necessary for the protection of the insane person and others, the guaranty of due process does not require notice to the alleged insane person and opportunity for a hearing as a condition precedent to temporary restraint." 12 C. J. 1211.

It is also alleged by appellant that the order of the probate court was made without a charge of insanity having been filed in said court; that she was not examined separately by two disinterested physicians, and that she had no notice of the proceeding against her, and no hearing when she was present. The order itself states that appellant was charged with insanity, and the matter coming before the court on the charge made, and the interrogatories taken by Drs. Duncan and Toolison, and the evidence taken by them, the court is of opinion, etc.

As we have already stated, there are two separate statutes dealing with insane persons. One is the statute to which attention has been called in the Revised Statutes. In proceeding under this statute it is necessary to have

the party present in court, but that is a proceeding for the appointment of a guardian. The other statute, which prescribed the method of. committing persons to the insane asylum does not require the presence of the person charged with insanity. It can be readily seen that in many instances it would be necessary to act quickly and probably without the presence of the person charged with insanity. This statute was enacted not only for the benefit of the public, but for the benefit of the insane person as well.

If there were no provision by which appellant could have a hearing and be present, the statute would be void, but, since there is ample provision, we think the statute is valid.

· The appellant was adjudged insane and committed to the insane asylum more than 23 years ago. If she were sane at that time, she would have taken steps to secure her discharge either by appeal or requesting a hearing. But, so far as the record shows, no steps have been taken by, her· for more than 20 years. She does not contend that she has recovered or been restored to sanity, but her only contention is that the order of the probate court is void.

The decree of the chancery court is affirmed.