38 So.2d 245

**In re BRYANT.**

No. 38642.

Dec. 13, 1948.

Rehearing Denied Jan. 10, 1949.

Thomas E. Furlow, of New Orleans, for Rufus C. Bryant, appellant.

Henry G. McCall, City Atty. and W. Blair Lancaster, Jr., Asst. City Atty., both of New Orleans, for R. A. Johnson, defendant-appellee.

HAMITER, Justice.

The relief sought in this action by plaintiff, Rufus C. Bryant, is the annulment of a judgment rendered on December 17, 1945, by the Civil District Court of Orleans Parish, committing him and 15 others, as indigent insanes and incapable of taking care of their persons, to the East Louisiana State Hospital at Jackson.

With respect to this plaintiff, an application to commit him was filed on December 11, 1945, by R. A. Johnson who acted for and on behalf of Dr. C. Grenes Cole, Coroner for the Parish of Orleans. On the following day the court commanded, in a warrant attached to the application, that he appear on December 20, 1945, at 10:30 o'clock a. m., "to show cause why you should not be adjudged an indigent insane, and committed as such to one of the State Hospitals for the Insane of the State of Louisiana, as provided by Act No. 303 of 1944." Further, it ordered him "to inform this court within five days from the service hereof the name and address of your physician, if you have any, as well as the names and addresses of any witnesses that you may desire to have summoned on your behalf." Also, the court commanded the civil sheriff, or any other peace officer for the Parish of Orleans, to take Bryant into custody and confine him in the City Mental Hospital until December 20, 1945, and on that date to produce him before the court so that he might be dealt with according to law.

Accompanying the application, as required by Sections 12 and 13 of Act No. 303 of 1944, was a certificate signed by the Coroner, Dr. C. Grenes Cole, and by Dr. Edmund Connely. This certificate, among other things, stated:

"Pt. thinks that everybody is against him. Thinks that the neighbors are watching him and talking about him. Imagines that his wife and the doctors are working against him and trying to do him harm.

He talks to voices and voices talk to him. Says his father is not dead, because he comes to see him. He also talks to his dead brother. Says his wife wants to get rid of him so she can get someone else. Wanted his wife's salary and says it is his and she should give him the money to spend; attempted to choke her when he could not get it."

Further, therein each of those physicians certified:

"I hereby certify that the patient mentioned in the application is not related to me by blood or marriage and that I am not connected with the hospital in other than a professional capacity and I further certify that for the reasons furnished in said application that the patient is in need of mental observation and hospital· care."

And on the back of the certificate was the following·

"Date Nov. 30, 1945.

"I hereby agree to transfer of Rufus C. Bryant to Jackson if the doctors advise and the Courts commit.

"(Signature)       · Frankie Bryant
                                    "wife."

According to the written return of a deputy sheriff of Orleans Parish, there was served on Rufus C. Bryant on December 14, 1945, a copy of the mentioned application and attached orders, one of the latter of which commanded him to appear before the court on December 20, 1945.

Instead of hearing the charges of insanity on the scheduled date of December 20, 1945, however, the court on December 17, 1945, or three days earlier, considered them and rendered a judgment reading in part:

"* * * Court convened this day at the City Hospital for Mental Diseases.

"Present:   Hon. Harold A. Moise,
                   "Judge of Division 'C',
                   "Parish of Orleans;

"and Drs. Edmund Connely and C. Grenes Cole having certified that the defendants are insane and should be committed in accordance with the Statute, having been sworn and having deposed to the same effect, and the Judge, after seeing and conversing with the defendants, being of the same opinion:

"It Is Ordered, Adjudged and Decreed that the said defendants, * * * Rufus C. Bryant, * * * be adjudged indigent insanes and incapable of taking care of their persons and that they be committed to the East Louisiana State Hospital at Jackson, La., in accordance with law."

.Pursuant to this judgment of commitment, and under a warrant issued by the court on the same date, Bryant was delivered to and received by the Superintendent of the East Louisiana State Hospital on December 20, 1945.

A short time thereafter, perhaps in January, 1946 (this date is not definitely shown by the record), the patient was discharged by such Hospital as being "without psychosis," meaning not insane.

Bryant instituted the instant action against R. A. Johnson on February 26, 1946,

praying that the judgment of commitment rendered on December 20, 1945, be decreed null and void ab initio and be set aside. For a cause of action, as is disclosed by his original and supplemental petitions, he alleged only that:

"Said judgment should be decreed null and void ab initio and set aside, because of the ill practices in the proceedings leading to the rendition and signing of said judg-ment, which, together with said judgment, were and are a fraud upon petitioner and deprive him of his rights and his liberty without due process of law, in contravention of Section 2 of Article I of the Constitution of Louisiana and Section 1 of the Fourteenth Amendment to the Constitution of the United States."

The defendant filed several exceptions and an answer.

Ultimately, after a trial of the merits, the district court rendered judgment dismissing the suit at plaintiff's costs.

On an appeal to the Court of Appeal, Orleans Circuit, that judgment was affirmed. 30 So.2d 233.

The cause is now before us for consideration by virtue of a writ of certiorari issued, on plaintiff's application, to the Court of Appeal.

As we appreciate his pleadings, the argument of his counsel here (both oral and in brief), and certain admissions made during the trial, plaintiff does not contend (and he did not allege) that he was not mentally ill when the judgment of commitment was rendered on December 17, 1945. His sole complaint appears to be that he was denied the opportunity of being heard in the insanity proceeding, the commitment having been adjudged three days before the date (December 20, 1945) scheduled and fixed in the court's order (a copy of which was served on plaintiff) for the hearing. Thus, in his petition as before shown, he alleged that the judgment should be decreed null " * * * because of the ill practices in the proceedings leading to the rendition and signing of said judgment * * *." Again, in the brief of his counsel it is said:

" * * * The essential fact here is, that, as appears on the face of the record itself and as admitted by counsel for defendant and by both the district judge and the Court of Appeal, the judgment was rendered against Bryant, without notice and without an opportunity to be heard."

And during the trial the following colloquy between counsel occurred:

"Mr Lancaster: (Counsel for defendant)

"Will you admit, Mr. Furlow, for the sake of argument only, that if he had been heard on the 20th he would have been committed?

"Mr. Furlow: (Counsel for plaintiff)

"I will admit he could have been legally heard.

"Mr. Lancaster:

"And if he had been heard it would have been valid?

"Mr. Furlow:

"Yes."

Plaintiff's position herein being as thus stated, we turn to a consideration of Act No. 303 of 1944, especially Section 13 thereof which treats of commitment by the court. That section recites:

"Section 13. Commitment by the Court: Upon the application of any responsible person, accompanied by a certificate from the coroner and one other qualified physician, as set out in Section 12, the judge of the civil district court may commit to any mental institution any person within his jurisdiction who is mentally ill, mentally defective, epileptic or inebriate, when, in his opinion, the welfare of the individual and the community is served best by his commitment to said institution.

"The judge may or may not request the presence of the mental patient. Pending the hearing on the petition, the patient may not be detained in any place provided for the detention of persons charged with, or convicted of, any criminal or quasi-criminal offense, except in emergency.

"The judge within his discretion, may commit such person for a limited period of observation before the termination of which time the superintendent shall report the hospital's findings to the judge for further disposition of the case.

"In the case of children within the jurisdiction of the juvenile court, proceedings shall be exclusively before the judge of the juvenile court."

It is to be noticed that among the provisions of Section 13 are none outlining a procedure to be followed by the judge in hearing the application for commitment filed by "any responsible person," a status unquestionably enjoyed by the Coroner of Orleans Parish. In fact, on the hearing, the presence of the mental patient is not even required. For a commitment by the court, however, it is essential that the application (made by a responsible person) be accompanied by a certificate from the Coroner and one other qualified physician, as set out in Section 12; also, that the judge conclude that the welfare of the individual and the community is served best by committing him to the institution.

To aid in reaching his conclusion, the judge may appoint a commission to inquire into the facts (this is not required except when demanded by the patient as hereinafter pointed out), for which provision is made in Sections 14 and 15 as follows:

"Section 14. Commission to Inquire Into the Facts: Upon application to the judge, as set out in Section 13, the judge may appoint a commission composed of the coroner and one or two other qualified physicians, which commission shall hear the evidence, take statements, examine the patient, and

render to the court a full report of its findings and the reasons therefor. The commission shall have the power to summon witnesses and compel their attendance in order that all the evidence may be made available before it. * * *

"Section 15. Report of the Commission and Hearing: Upon receipt of the report of the commission, which shall be made within thirty days of its appointment, the judge of the appropriate court shall hold a hearing at which the person suspected of being mentally ill, mentally deficient, epileptic or inebriate, shall be summoned to appear. If, as a result of the report of the commission and of the hearing, the judge believes that the person should be committed, he shall specify that an order of commitment be issued and that a certified copy of this order be sent to the superintendent of the institution where such person is to be committed."

In rendering the judgment of commitment attacked in the instant action, the judge did not have before him a report of a duly appointed commission, nor did he hold the hearing, provided for in said Sections 14 and 15; without such aid, evidently, he was able to conclude that the welfare of the patient and the community would best be served by the commitment. But his conclusion was influenced, as the judgment itself discloses, by the certificates of Dr. Cole (the Coroner) and Dr. Connely that Bryant was mentally ill and in need of ob-

servation and hospital care; by the sworn testimony of those medical experts to that effect; and by himself having seen and conversed with the patient. These influences appear to adequately satisfy the requirements of Section 13.

Of course, plaintiff alleges, and his counsel argues forcefully, that to deny him an opportunity to be heard is to deprive him of his rights and liberty without due process of law in contravention of Section 2 of Article I of the Constitution of Louisiana and Section 1 of the Fourteenth Amendment to the Constitution of the United States. Were it not for two concurring and important factors such contention might have considerable merit. In the first place a commitment to an insane asylum under a statute such as Act No. 303 of 1944 is merely a matter of police regulation, purposing to protect both the patient and the general public; it produces none of the effects of a formal interdiction. Vance v. Ellerbe, 150 La. 388, 90 So. 735; Succession of Connor, 165 La. 890, 116 So. 223; and Nash v. Bowden et al., 178 La. 602, 152 So. 305. In the second place this plaintiff was not denied the opportunity of being heard. Even after the judgment of commitment was rendered under Section 13 of Act No. 303 of 1944 he could have obtained both the appointment of a commission and the hearing provided for in Sections 14 and 15 of that statute. Thus, Section 16 states: "Section 16. Right to Hear-

ing: Any person committed under Sections 11, 12, 13 or 17, but without a hearing as provided in Sections 14 and 15, shall be entitled to a hearing by presenting a petition to the judge, demanding a hearing and the appointment of a commission as set out in said Sections 14 and 15. All proceedings under this Act shall be by summary process."

But he did not avail himself of that opportunity and privilege.

The rulings of the district court and of the Court of Appeal in this cause were based largely on our holding in Oliver v. Terrall, 152 La. 662, 94 So. 152, 153, which involved a commitment to an insane asylum under the provisions of Act No. 68 of 1918. Therein, we observed that the release of a committed person "put an end to the whole matter, a commitment to an insane asylum not being an interdiction within the meaning of the Civil Code aforesaid, and no formal proceeding to revoke it being at all necessary." Whether or not that case is decisive of the issue here, we do not determine. We prefer to and do predicate this decision solely on the provisions of Act No. 303 of 1944 under which plaintiff was committed.

The judgment is affirmed.

MOISE, J., recused.