ROBERT E. HIATT, Appellee, v. DR. A. SOUCEK, acting Superintendent of Cherokee State Hospital, Appellant.

No. 47330.

(Reported in 36 N. W. 2d 432)

MARCH 8, 1949.

Robert L. Larson, Attorney General, Clarence A. Kading, Assistant Attorney General, and Harold R. Grigg, County Attorney, for appellant.

Shaw & Shaw, of Pocahontas, and Burt & Prichard, of Emmetsburg, for appellee.

SMITH, J.—While plaintiff was serving a sentence in the Men's Reformatory at Anamosa he was found insane (dementia praecox; paranoid type) and transferred to the Department for Criminal Insane of said institution. When his sentence expired he was transferred to the Cherokee State Hospital of which defendant is acting superintendent.

Those proceedings were pursuant to certain sections of chapter 246, Code of 1946. The original transfer to the Reformatory Department for Insane was based on the result of an examination by Dr. R. A. Stewart, Superintendent of the Independence State Hospital (section 246.16). Before plaintiff's transfer to Cherokee Dr. Stewart's finding was confirmed by Dr. L. P. Ristine, Superintendent of the Mount Pleasant State Hospital, and Dr. Coburn of the Psychopathic Hospital at Iowa City (section 246.17).

The order of the Board of Control of State Institutions based on these findings, transferring plaintiff to Cherokee, was dated February 7, 1948, the transfer was effected February 8, and this proceeding was commenced April 7, 1948. Defendant answered and produced plaintiff in open court April 13.

Counsel for plaintiff at that time stated that two distinct questions were involved:

1. The constitutionality of Code section 246.17, the burden of showing invalidity being on plaintiff; and

2. The sanity or insanity of plaintiff, the burden being on defendant to show insanity, plaintiff "never having been adjudged insane by any legal body." Plaintiff's counsel suggested that the first issue be first taken up as it might be decisive of the case.

The court (and apparently defendant) acquiesced in the suggested manner of procedure, and arguments on the constitutional question followed, after which the court dictated "findings of fact and conclusions of law" holding that because the procedure prescribed by Code chapter 229 (or similar procedure) had not been followed plaintiff's detention under Code section 246.17 was illegal as the latter statute "violates both the Constitution of the State of Iowa and the Constitution of the United States."

Thereafter, but prior to the entry of formal judgment, defendant moved: "1. That an immediate hearing be had to determine the present sanity or insanity" of plaintiff "as is provided by * * * section 229.37, Code of 1946"; and "2. That if plaintiff, on such hearing, is found to be insane or mentally deranged, that an order be entered * * * providing for his restraint or commitment * * * as is provided by * * * section 663.38 of the Code of 1946."

The trial court thereupon overruled the motion, holding the requested procedure was not available since it had been found the commitment was invalid. Final judgment was then entered from which this appeal is taken.

I. It is of course our duty to uphold the constitutionality of the statute if possible. State ex rel. Wright v. Iowa State Board of Health, 233 Iowa 872, 876, 10 N. W. 2d 561; Decker v. American University, 236 Iowa 895, 903, 20 N. W. 2d 466. An Act will not be declared unconstitutional unless it clearly, plainly, palpably and without doubt infringes the Constitution. State v. Talerico, 227 Iowa 1315, 1322, 290 N. W. 660; Keefner v. Porter, 228 Iowa 844, 293 N. W. 501. We have repeatedly said in various ways that every reasonable doubt must be resolved in favor of constitutionality. The cases so holding are literally "too numerous to mention." See 5 Iowa Digest, Constitutional Law, Key No. 48; 16 C. J. S., Constitutional Law, section 98, page 234, note 2; also section 99.

II. The particular charge against the statute in question here is that it violates the "due process" clauses of both Federal and State Constitutions. Plaintiff argues that the statute delegates to an administrative body (the Board of Control

of State Institutions) "the right to confine for life every person sentenced to the penitentiary, irrespective of the offense or sentence imposed." Certainly this sweeping premise, if established, would support the trial court's conclusion.

Code section 246.15 provides for the maintenance in the Men's Reformatory of "a department in which all insane convicts shall be confined and treated." Section 246.16 directs transfer to that department of any prisoner found to be insane upon examination "by one of the superintendents of the hospitals for the insane" and his confinement therein "until the expiration of his sentence, or until pronounced sane, in which latter event he shall be returned to the penitentiary, or held in the reformatory until the expiration of his sentence."

Code section 246.17 is the one which is involved here and which the trial court has held violative of due process. It provides:

"When the board has reason to believe that a prisoner in the penitentiary or said reformatory, whose sentence has expired, is insane, it shall cause examination to be made of such prisoner by competent physicians who shall certify to the board whether such prisoner is sane or insane. The board may make further investigation and if satisfied that he is insane, it may cause him to be transferred to one of the hospitals for the insane, or may order him to be confined in the department for the insane at the reformatory."

 We think, however, this section must be read with other statutory provisions. Chapter 246, in which it is found, is entitled "Penitentiary and Men's Reformatory." It provides for no hearing and no opportunity to appeal or contest the finding of insanity at the time or thereafter. But when section 246.17 is invoked and the prisoner, at the termination of his sentence, is transferred to a hospital for the insane he becomes a patient there and subject to the provisions of chapter 229. This chapter relates primarily to the "Commitment and Discharge of Insane" through the instrumentality of the Commissions of Insanity created under chapter 228. It does not suggest however that commitment to state hospital may not be accomplished

in other ways. And certain sections are manifestly applicable to all persons confined as insane in hospitals under the supervision of the Board of Control. See sections 229.37, 229.38 and 229.39. Note also chapters 226 to 228, inclusive.

Code section 229.37 provides:

"*All persons confined as insane shall be entitled to the benefit of the writ of habeas corpus, and the question of insanity shall be decided at the hearing.* If the judge shall decide that the person is insane, such decision shall be no bar to the issuing of the writ a second time, whenever it shall be alleged that such person has been restored to reason." (Italics supplied.)

This provision was in the statutes when section 246.17 was enacted. It appeared in the Revision of 1860 (section 1441) and has since that time been a part of our statutory law regulating the care of the insane. Code section 246.17 was enacted as section 6 of chapter 69, Acts of Twenty-second General Assembly. It seems to have appeared first in the Code of 1897, section 5710. It applies to persons convicted of crime, found to be insane at the expiration of their term of sentence. It operates to permit their transfer to the hospital for the insane with the undoubted right to a judicial determination as to mental condition by way of habeas corpus under section 229.37, just as that right is provided to other patients who enter the hospital by another door. We find no reason for restricting the right to invoke the last-cited section to cases in which the patients are held under commitment by county commissioners of insanity. The language of the section is broad. "*All persons confined as insane*" are granted the right to have their commitment and detention reviewed, not merely as to technical defects in procedure, *but also as to their actual mental condition.* It and the two succeeding sections clearly are for the protection of all persons confined or restrained in state supervised hospitals.

III. The habeas corpus proceeding provided for by section 229.37 is analogous to an appeal to the district court. It is not merely the common-law remedy of the same name. It serves more than the usual purpose of testing the legality of the

detention, as limited, for example, in Hallway v. Byers, 205 Iowa 936, 939, 218 N. W. 905. It permits an inquiry into and a determination as to whether the plaintiff is *in fact a proper subject of detention*. That is exactly what would have been inquired into had the proceedings originated with the commission on insanity and been *appealed* to the district court. We have already held that an adjudication of insanity in a habeas corpus proceeding under this statute made unnecessary the trial of a concurrent appeal from the order of the commission. In re Bresee, 82 Iowa 573, 48 N. W. 991. The habeas corpus proceeding had served the purpose of an appeal. We think it serves that purpose in cases like the present one where there is otherwise no opportunity for judicial review. The name the remedy bears is not important.

That the function of a writ of habeas corpus may (for the benefit of one held as an insane person) be thus enlarged by statute into the equivalent of an appeal is squarely held in In re Crosswell's Petition, 28 R. I. 137, 66 A. 55, 13 Ann. Cas. 874. A prior Rhode Island case, In re Gannon (Doyle, petitioner, 16 R. I. 537, 18 A. 159, 5 L. R. A. 359, 27 Am. St. Rep. 759) had held a commitment unconstitutional where no right of review was provided which the patient himself could invoke except by habeas corpus which right the court said was available only if the restraint was unlawful.

After the Doyle decision the function of the writ of habeas corpus was enlarged, by statutory amendment, to require the court to determine the issue of sanity or insanity. In the Crosswell case, supra, at page 143 of 28 R. I., page 58 of 66 A., the petitioner argued the continued inadequacy of the statute because "a trial shall in all cases precede the apprehension and restraint of a person suspected to be insane." The court denied the contention and held petitioner's summary detention was not violative of due process, since he had the right under the amended statute to a trial on the issue of his mental condition.

IV. The last-cited case clearly answers our final question: Does this right to have the person's mental condition judicially inquired into *after commitment* atone for the lack of such hearing *prior to or in connection with commitment?*

In other words, does it make the whole plan conform to "due process"? As we have already pointed out section 229.37 existed when section 246.17 was enacted. May we not presume in favor of the constitutionality of the statute that the later enactment omitted provision for a precedent formal hearing because the prisoner (or patient) would have this subsequent right to a judicial review and hearing as to his mental condition? It is our duty to consider the statute in its legislative setting and in the light of other measures in pari materia. 16 C. J. S., Constitutional Law, section 97, page 228, note 74.

■ We have already held that the right of appeal to the district court from the commission's decision adjudicating a person insane *without notice to him and without his presence* (under Code section 229.4) affords him due process. Chavannes v. Priestly, 80 Iowa 316, 45 N. W. 766, 9 L. R. A. 193; County of Black Hawk v. Springer, 58 Iowa 417, 10 N. W. 791. That may have been one reason for providing the right of appeal from the commission's finding. The statute creating it was enacted March 26, 1880. County of Black Hawk v. Springer, supra.

In a later case we again said the constitutional right of such person to due process is safeguarded by his right of appeal to the district court, his right subsequent to commitment, to obtain re-examination from time to time of his mental status (under sections 229.3 to 229.36) *and his right to the writ of habeas corpus* under Code section 2306, Code of 1897, now section 229.37. Corcoran v. Jerrel, 185 Iowa 532, 170 N. W. 776, 2 A. L. R. 1579. See to the same effect Payne v. Arkebauer, 190 Ark. 614, 80 S. W. 2d 76.

■ It has been held the parent or guardian of a child removed from his custody in summary proceedings is not denied due process if an adequate remedy is available by which he may afterward have his rights presented and determined in a proper proceeding. Allen v. Williams, 31 Idaho 309, 171 P. 493. In short, summary or ex parte administrative procedure immediately affecting private personal and property rights is usually held not to violate constitutional safeguards if opportunity for prompt subsequent judicial review is afforded. See

discussion in 16 C. J. S., Constitutional Law, section 628; 12 Am. Jur., Constitutional Law, section 612, notes 16, 17, 18.

In a case involving property rights it has been said a judicial determination at the outset is not necessary if a later method of review is available. Phillips v. Commissioner of Internal Revenue, 283 U. S. 589, 593–599, 51 S. Ct. 608, 610–612, 75 L. Ed. 1289, and cases cited. This is based on the theory that "property rights must yield provisionally to governmental need." That is but another way to say that private rights must yield in proper cases to public policy.

The detention of an insane convict beyond the term of his sentence is too a matter of public policy. It is not alone for his protection but for the protection of society. It is in the public interest. 44 C. J. S., Insane Persons, section 8, page 56, note 86; also section 62. No question is raised as to the validity of plaintiff's transfer as an insane person to the Department for Criminal Insane of the Reformatory. As to the constitutionality of the determination of his mental condition at that time, see Douglas v. King, Warden, 8 Cir., Mo., 110 F. 2d 911, 127 A. L. R. 1200; Estabrook v. King, Warden, 8 Cir., Mo., 119 F. 2d 607, cases exactly in point.

In In re Crosswell's Petition, supra, at page 144 of 28 R. I., page 58 of 66 A., it is pertinently said:

"Insanity is a disease, and the State has the right to treat one who has the misfortune to suffer from it, as it does one who has a contagious malady. The exercise of this right of self-protection must be regulated by the circumstances of the case. If it is dangerous to the community that a citizen should go at large, whether because he is liable to spread contagion or to commit some act of violence, public safety demands that he be immediately confined, either with or against his will, and the extent of his personal right can only be to test by judicial process, at a time when it may safely be done, the propriety of his restraint. We are of the opinion that the safeguards of this right provided by the statute are ample and just."

As we have already pointed out the subsequent review

referred to by the Rhode Island court above was by habeas corpus under a statute similar to our section 229.37.

The record here does not reveal the nature or circumstances of the crime for which plaintiff was originally imprisoned except that it was for assault with intent to commit great bodily injury. Doubtless, however, they were known to the board. When his term of sentence expired he was being lawfully treated as insane. Whether it was to his own and the public interest to turn him loose upon society was for the board to determine.

To require a prisoner in this situation to be returned to his own county (assuming he had a residence in Iowa) and be taken before the commission of insanity there, would serve no material or constitutional purpose not served by the method followed here. The commission under our statute is composed of the clerk of the district court, a physician in actual practice and a practicing attorney. Code section 228.2. They would probably have no right to pass on a case like the present until the prisoner's term of sentence was completed. See Code section 228.8. There would of necessity be a lapse of time between the discharge and the insanity inquest. Even then the patient would be before a mere administrative tribunal under procedure held constitutional only because of the right to have its decision subsequently judicially reviewed. As we have pointed out such right of review existed here.

Under section 246.17 the board acts on the opinion of competent physicians and the result of such further investigation as it may deem advisable. With the statutory right to have the action reviewed by the district court under writ of habeas corpus we do not think the patient is denied due process of law.

Our conclusion finds support in Ex parte Dagley, 35 Okla. 180, 128 P. 699, 44 L. R. A., N. S., 389; In re Dowdell, 169 Mass. 387, 47 N. E. 1033, 61 Am. St. Rep. 290; and In re Le Donne, 173 Mass. 550, 551, 54 N. E. 244, 245. The last-cited case involved the detention of an insane convict beyond the term of his sentence. The court said:

"Ample provision is made for the discharge of such per-

sons * * * and the Legislature, having provided for the removal of the convict to an insane asylum if he was found on examination to be insane, well may have been content to leave the matter of his discharge, if he was still insane at the expiration of his sentence, to be governed by the laws applicable to the discharge of other lunatics. * * * His continued confinement after the expiration of his sentence in an asylum for insane criminals would be in accordance with the policy established by the State, that the criminal insane or persons who have been vicious in their lives should be confined in an institution especially devoted to their care. * * *

"We discover nothing unconstitutional in the statute under which the petitioner was removed to the asylum and is detained there. It is not unconstitutional because it authorizes the commitment and detention of an insane person without any previous hearing, or without an order from any judge. The petitioner 'is entitled as a matter of right to institute judicial proceedings under the statutes, to determine the necessity and [or] propriety of his confinement.' "

It should be pointed out that proceedings for the commitment of insane persons to state supervised hospitals are not to be confused with guardianship proceedings. McKinstry v. Dewey, 192 Iowa 753, 756, 185 N. W. 565, 23 A. L. R. 587; Gahwiller v. Gahwiller, 237 Iowa 1291, 1299, 25 N. W. 2d 485; Payne v. Arkebauer, supra.

We have not ignored, though failing to discuss, the authorities cited by appellee. We think they are not applicable here. The fallacy of appellee's argument lies in its failure to recognize section 229.37 to be available in a case of this kind as furnishing a mode of review on the issue of insanity, and in its failure to concede that summary commitment is not violative of due process *if such a mode for prompt judicial review is furnished.*

The action as brought and presented on appellee's behalf does (somewhat inconsistently) indicate however that he relies not merely on the argued unconstitutionality of the procedure by which he was committed, but also on the fact of his alleged sanity. This is a tacit recognition that section 229.37 provides

for something more than a common-law writ of habeas corpus to test the *legality* of his detention; and also that the remedy is available to one committed under section 246.17.

The procedure provided by these statutes being in our opinion impervious to the attack made here it follows the decision of the trial court must be reversed and the case remanded for trial on the issue of plaintiff's sanity. It is so ordered.—Reversed and remanded.

All JUSTICES concur.