252 So.2d 624

**Billy Jack PHILLIPS**

**v.**

**J. W. GILES, as Admr., etc.**

**5 Div. 879.**

Supreme Court of Alabama.

Sept. 9, 1971.

Herbert J. Lewis, Jr., Montgomery, for appellee.

Russell, Raymon & Russell, Tuskegee, for appellant.

COLEMAN, Justice.

A patient, who is confined in the Veterans Administration Hospital at Tuskegee, appeals from a judgment denying his release from the hospital after a hearing at which he was present and represented by his counsel. The patient will sometimes be referred to as petitioner.

The hearing was initiated by his petition for habeas corpus addressed to the Judge of the Circuit Court of Macon County. The petitioner alleges that he is illegally restrained of his liberty and confined in the hospital under a commitment order issued by the Judge of the Probate Court of Montgomery County; that said order is void because petitioner was given no notice of a commitment hearing and, he was therefore, denied the right to appear and defend at said hearing as provided by Title 45, § 210, Code 1940,[1] and denied due process of law; that said order of commitment is void because, as petitioner is informed and believes and as he alleges upon such information and belief, no hearing was had as provided by Title 45, § 210, Code 1940; and that said order is void because petitioner was of sound mind at the time said order was issued.

The respondent to the petition is the Director of the hospital. He produced the body of petitioner before the Circuit Judge and made return under oath to the writ of habeas corpus. In his return to the writ, respondent answers that he holds petitioner by an order of the Probate Court, a copy of the order being attached to the answer; that petitioner has been examined and observed by the hospital staff and, in opinion of the staff and respondent, petitioner's mental condition requires his further confinement for care and treatment and his own welfare and the welfare of others; that respondent cannot conscientiously recommend petitioner's release under Title 45, §§ 218 or 219.[2]

Sections 218 and 219 provide, in substance that when a patient has been restored to a normal or comparatively safe and good mental condition for a period of time sufficiently long to warrant the opinion of the superintendent of the hospital that the patient ought to be returned to his home or set at large, the superintendent shall take steps to bring about the patient's release.

Petitioner filed a traverse to the return and denied the allegations thereof.

1.  § 210 contains provisions which provide for commitment to hospitals operated by the United States Veterans Administration, and, contains the following sentence, to-wit:
    "The right of such person to appear and defend shall not be denied."

2.  Respondent's return contains the following statement:
    ". . . Billy Jack Phillips has been examined and observed by the staff of the Veterans Administration Hospital, and in my opinion and in the opinion of the staff of said hospital he is sufficiently deficient or defective mentally to require that for his own and others' welfare, he be retained in said hospital for restraint, care, and treatment. And that I, as Director of the Veterans Administration Hospital, Tuskegee, Alabama, have been and am still conscientiously unable to recommend his release under the provisions of Code of Alabama, Title 45, Section 218 or 219, because he has not been restored to a normal or comparatively safe and good mental condition warranting the opinion on my part as Director of said hospital that he ought to be returned to his home or set at large again. . . ."

The chief clerk of the Probate Court testified that he signed the order committing petitioner to the hospital (Title 13, § 300), and that no formal commitment hearing was held.[3]

In pertinent part, the commitment order recites:

". . . that it having been alleged to me that Billy Jack Phillips a resident of said County is insane, and that for his own and public welfare demand that he be sent to the hospital for insane persons for custody and treatment, pursuant to the statutory provisions in such cases, I have called before me the following credible witnesses W. J. Williams and J. L. Berry and Dr. E. J. Kocour a reputable physician, practicing medicine in the State, and having examined them under oath, and otherwise fully investigated the facts of the case, with the said Billy Jack Phillips not present in Court, I do hereby certify that sufficient proof has been adduced before me to satisfactorily show that the said Billy Jack Phillips is so defective mentally that he ought to be committed to the hospital for insane persons for safe keeping and treatment.

"I further certify, that satisfactory proof has been adduced before me that said _____ has _____ sufficient means to pay _____ expenses in the hospital.

"I therefore issue this certificate of mental disqualification and commit him to the Veterans Administration Hospital at Tuskegee, Alabama according to instructions received from the Superintendent as _____ patient."

The affidavits made by W. J. Williams and J. L. Berry, respectively, recite that they did observe petitioner and ". . . in my opinion and knowledge of the said Billy Jack Phillips I certify that he is insane and in my judgment for his own good and for the good of the public should be committed to the hospital for the insane."

The affidavit of Dr. Kocour recites that he has made a careful examination of petitioner and ". . . from said examination find that said Billy Jack Phillips is insane and for his own good and for the good of the public he should be committed as early as practical to Hospital for the insane."

The chief clerk further testified that, to his knowledge, no notice was given to petitioner that a commitment hearing was going to be held, that no notice was ". . . given out of the Probate Court," that petitioner was not present at the commitment hearing, that no formal commitment hearing was held, and, if such a hearing were held, his records would show it.

Petitioner testified that he was never carried before the Probate Judge for a commitment hearing, that he did not have notice that a commitment hearing was going to be held for him, that his first knowledge of a hearing was when he arrived at the hospital, that he has been continuously confined in maximum security

3. The witness testified:
"Q Now, was there any formal commitment hearing held?
"A No, sir. It isn't required by law.
"Q Now—
    "MR. RUSSELL: I ask that that last part of his answer be stricken out as not being responsive.
    "THE COURT: Well, strike it out.
"Q Mr. Thompson, the commitment order shows that W. J. Williams, J. L. Berry, and Dr. E. J. Kocour were examined under oath, were they actually examined by Judge Hooper?
"A No, sir.
"Q Did they ever appear in a hearing before Judge Hooper?
"A Not to my knowledge.
"Q Did they appear in Court with you?
"A Not to my knowledge.
"Q These affidavits filed by these three parties, those are the affidavits used when your Court issued the commitment order?
"A Yes, sir.
"Q Was any other evidence used in connection with those affidavits?
"A No, sir."

with an attendant twenty-four hours a day, that he is a fully competent person, that he is being held ". . . for security reasons because they know that I want to escape . . ." and that at the time he was carried to the hospital he was ". . . in perfect health—mentally, physically, and morally. . . ." He further testified that, at the time of his commitment, he was in jail and the charges against him were: "Sec. 2312 Criminal Code of Alabama, which is commonly known as the Dyer Act, dealing with transportation in interstate commerce of a stolen vehicle"; and that he knows the charges have been dropped, although he has never seen any papers to that effect and has never been in court.

J. L. Berry testified that he was a deputy sheriff; that he remembers when petitioner was in jail; that the witness knows Dr. Kocour; that, in the opinion of the witness, petitioner needed to be committed at the time of his commitment; that the opinion of the witness is based on the fact that petitioner was constantly wanting to see the doctor and quoting "all these case numbers and habeas corpuses and everything like that" which the witness is not familiar with and does not understand.

The closing recital in the record at the conclusion of the hearing is as follows:

"THE COURT: Now, Mr. Russell, as I understand you, your only insistence or contention in this case is that he should have had notice of any hearing in the Probate Court, and of his commitment, prior to the order of commitment?

"MR. RUSSELL: That's correct.

"THE COURT: Well, the Petition is denied."

The order of the court denying petitioner's release contains the following recitals:

"In the instant case the habeas corpus was instituted not to inquire into the insanity or sanity of the petitioner, at this time. However, ground 4 of the petition is that the commitment was void in that the petitioner was of sound mind at the time of the commitment. However, no evidence whatsoever was offered by the petitioner as to his sanity at the time of the commitment or at this time, other than the statement of the petitioner himself that he was of sound mind. On the other hand the return of Dr. J. W. Giles, Director of the Veterans Hospital at Tuskegee, Alabama, is to the effect that the petitioner 'is sufficiently deficient or defective mentally to require that for his own and others' welfare, he be retained in said hospital for restraint, care, and treatment.' "

■ In his petition, petitioner did not allege that he was then of sound mind. In respondent's return, however, respondent alleges that petitioner is so mentally deficient as to require his further confinement for care and treatment and for the welfare of himself and others. Petitioner filed a traverse of the return and denies the allegations thereof. An issue of fact was thus presented as to petitioner's sanity at the time of trial, but that issue was not tried. Petitioner did not choose to try the issue of his sanity at the time of the hearing. The statement of his counsel at the close of the hearing makes this clear. We are of opinion that the judge did not err in not trying an issue which petitioner did not choose to have tried and determined.

■ As we understand his argument in brief, petitioner says he is entitled to be released from the hospital because the order under which he was committed and is being confined is void. He says the order is void because it was made without prior notice to him and without giving him a hearing prior to commitment and an opportunity to defend at a prior hearing.

Petitioner cites, among other cases, Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222, in which the United States District Court for the District of Columbia ordered the release of a patient who had been committed as insane to St. Elizabeth's Hospital. The court said that appellant was held

474

". . . under a statute which makes no provision for a hearing and opportunity for defense . . . The statute . . . is . . . not even intended as a lunacy commitment statute. It assumes insanity already determined . . . ." The appellant had been transferred from a United States Marine Hospital to St. Elizabeth's on authority of a letter from the Secretary of the Treasury.

In *Barry,* the District Court observed that certain authorities held that a commitment without prior hearing is not unconstitutional as denying due process, if a later hearing is afforded. The court said:

"The appellee also urges such cases as Hammon v. Hill, D.C., W.D.Pa., 1915, 228 F. 999; County of Black Hawk v. Springer, 1882, 58 Iowa 417, 10 N.W. 791; In re Dowdell, Petitioner, 1897, 169 Mass. 387, 47 N.E. 1033, 61 Am.St.Rep. 290; Ex parte Dagley, 1912, 35 Okl. 180, 128 P. 699, 44 L.R.A.,N.S., 389; In re Petition of Simon G. Crosswell, 1907, 28 R.I. 137, 66 A. 55, 13 Ann.Cas. 874. The statutes involved in these cases were lunacy statutes. They did not require notice and opportunity to be heard in advance of commitment and confinement, but did afford a hearing later at the instance of the subject, in the Dowdell Case by special statutory proceeding, and in the other cases by the writ of habeas corpus. The provisions for ultimate hearing were held to save the statutes. We think the cases are wrongly decided."

We do not agree with last sentence quoted from *Barry.*

The following proposition stated and relied on by respondent we hold to be correct law:

Title 45, § 210, Code 1940, makes no provision for, and due process does not require,

prior notice to the person being committed because he has the immediate right to test the legality of his detention in a habeas corpus proceeding under Title 15, § 3, which recites:

"Any person confined as insane may prosecute a writ of habeas corpus as provided in this chapter; and if the judge, or the jury, when the petitioner demands the issues arising to be tried by a jury, shall decide at the hearing that the person is insane, such decision does not bar a second application alleging that such person has been restored to sanity."

In addition to the authorities cited above in the quotation from Barry, the proposition is, as it seems to us, supported also by the following: Moses v. Tarwater, 257 Ala. 361, 58 So.2d 757; Doughty v. Tarwater, 261 Ala. 263, 73 So.2d 540; In re Coates, 9 N.Y.2d 242, 213 N.Y.S.2d 74, 173 N.E.2d 797; Hiatt v. Soucek, 240 Iowa 300, 36 N.W.2d 432; In re Bryant, 214 La. 573, 38 So.2d 245.

■ Petitioner has had the opportunity to have tried the issue of his present sanity at the hearing in the instant case but chose not to try that issue. Petitioner has the right today to file another petition for habeas corpus under Title 15, § 3, and to have tried, by jury if he demand it, the issue of his sanity at the time of hearing. At such a hearing the burden of proving that petitioner is so defective mentally as to require his confinement will be on the respondent because the law presumes petitioner to be sane, and no court has yet, after notice and hearing, adjudged that petitioner is mentally unsound or insane.[4] If a court of competent jurisdiction, after due notice and hearing, shall adjudge him insane, then he may again proceed under Title 15, § 3, to have his sanity determined, but after he has once been lawfully adjudged to be insane, the burden of proof

4. "The law presumes every person sane and casts the burden of establishing insanity on the one asserting it." Equitable

Life Assur. Soc. v. Welch, 239 Ala. 453, 195 So. 554.

then will be on him to prove his restoration to sanity. Jones v. Jones, 275 Ala. 678, 158 So.2d 481.

What the Supreme Judicial Court of Massachusetts said in a similar case seems appropriate here:

". . . It is not denied that the commitment was in accordance with the provisions of the statutes which apply alike to all the inhabitants of this commonwealth. These statutes do not, in terms, require any notice to the person alleged to be insane, before the order of commitment is signed; and probably no such notice is required by construction, in view of the long usage to the contrary in this Commonwealth. But ample provision is made by later sections of the same chapter for his discharge afterwards by any two of the trustees of the hospital, or, upon judicial proceedings, by a justice of the supreme judicial court, upon the written application of any person, if it appears that the person so confined is not insane, or that he is not dangerous to himself or others, and ought not longer to be so confined. (Citation omitted)

"The order of commitment settles nothing finally or conclusively against the person committed. It does not take from him the care or control of his property. It is not equivalent to the appointment of a guardian over him. (Citation omitted) He is entitled, as a matter of right, to institute judicial proceedings under the statutes, to determine the necessity and propriety of his confinement. He is not denied the same protection of the laws which is enjoyed by all other persons in the Commonwealth under like circumstances. He is not, therefore, deprived of liberty without due process of law, according to the judicial construction which has been put upon those words. (Citations omitted) It has been repeatedly declared that the phrase 'due process of law' does not of itself require a trial by jury in states where the usage and statutes are otherwise. (Citations omitted) The legislature, as *paren patriae*, may, to some extent, make provision for the care of those who are unable to take proper care of themselves, as in the case of insane persons and neglected children. (Citations omitted) And the right to institute judicial proceedings under the statutes is a sufficient protection of the liberty of the subject to meet constitutional requirements. (Citations omitted)" Dowdell, Petitioner, 169 Mass. 387, 47 N.E. 1033.

Because petitioner has the right at any time to proceed to a trial of his present sanity under Title 15, § 3, as aforesaid, we hold that he is not confined without due process of law, and that the court did not err in refusing to order his discharge from the hospital.

Affirmed.

SIMPSON, MERRILL, HARWOOD and McCALL, JJ., concur.

LAWSON, Justice (concurring specially.

I do not concur in the holding of the court relative to the constitutional questions to which it has written.

It is obvious that the appellant sought to avoid a determination by the court as to his sanity at the time of the hearing and although that question may not have been technically within the pleadings in the case, yet it affirmatively appears from the judgment that the trial court in concluding that appellant should not be discharged gave consideration to the return of the Director of the Veterans Hospital at Tuskegee to the effect that appellant's mental condition was such that he should not be discharged. In view of that posture of the case, I concur in the affirmance of the judgment of the trial court on the authority of Moses v. Tarwater, 257 Ala. 361, 58 So.2d 757.

HEFLIN, C. J., and BLOODWORTH and MADDOX, JJ., concur in the foregoing special concurrence of LAWSON, J.

**476**

BLOODWORTH, Justice (concurring specially):

I concur in the special concurrence of Mr. Justice Lawson. I agree that we need not reach the constitutional issue of "due process" because the trial judge considered that "appellant's mental condition was such that he should not be discharged," following Moses v. Tarwater, 257 Ala. 361, 58 So. 2d 757 (1952).

Notwithstanding, I wish to add these additional observations. I would most respectfully disagree with the court's holding (in Mr. Justice Coleman's opinion) that the right to file a writ of habeas corpus satisfies fundamental "due process" in the case of one committed to an Alabama mental institution. (Title 15, § 3, Code of Alabama 1940.) On that issue, I agree with that which Mr. Justice Brown wrote in his dissent in Moses v. Tarwater, supra:

> "The statutes enacted by the legislature, some of which are hereinabove set out, provide the vehicle through which patients are received as inmates and patients into this state institution for the treatment and confinement of insane persons, state action; which clearly bring this case within the scope of the provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States, guaranteeing to the citizens of the state and of the United States the right to *due process of law* before their liberties are taken, as well as within the provisions of the Constitution of the State of Alabama. In the light of these constitutional provisions and the facts of this case, we are constrained to hold that §§ 208 and 210, Title 45, Code of 1940, are violative of the due process clauses of the State and Federal Constitutions. *Clearly these statutes authorize ex parte examination without notice and a right to be heard, followed by forced confinement without the consent of the individual whose liberty is taken from him.*" [Emphasis supplied]

Is it not ironic, to say the least, that this court holds that a person's liberty *may* be taken at an ex parte hearing without notice to him or an opportunity to be present, yet that person's property *may not* be taken from him without an inquisition into his sanity at a hearing held for that purpose, representation by counsel, notice to him, an opportunity to be present (in most instances), and with a jury empanelled to try the issue? (See Title 21, §§ 9–14, Code of Alabama 1940).

With respect to "due process" under the inquisition statutes, supra, Mr. Justice Thomas spoke for this court in Fowler v. Fowler, 219 Ala. 457, 122 So. 444 (1929):

> "Before consideration of the specific requirements of our statute, we may observe the requirements of due process and of that right under amendment to the Federal Constitution. Lord Chancellor Erskine, in 1806, declared that a writ of notice must be served on one who is made the subject of a commission of lunacy; that the right to be present at the execution of that commission and to be heard before condemnation was 'his privilege.' Ex parte Crammer, 12 Ves.Jr. 444, 455. This natural right found expression in the due process clauses of the Constitution of the United States (Amendments 5 and 14) and in the several Constitutions of Alabama (Const. 1819, art. 1, § 10; 1861, art. 1, § 10; 1865, art. 1, §§ 7, 14; 1868, art. 1, § 8; 1875, art. 1, §§ 7, 8, 14; 1901, §§ 6, 7, 13). Early decisions of our courts are to the effect that proceedings for inquisition of lunacy and appointment of a guardian of a non compos without notice are coram non judice and void. (Cases cited.) * * *"

If I felt we needed to reach the issue, I would reverse this judgment being convinced that petitioner was denied "due process" of law in being denied a hearing before commitment.

MADDOX, J., concurs in the foregoing special concurrence of BLOODWORTH, J.