HENRY MAXWELL, Appellant, v. C. A. MAXWELL, Appellee.

**INSANE PERSONS:** Justifying Reasonable Restraint. An insane person who is dangerous to himself and others if permitted to go at large may, without process of law, be reasonably restrained by one who, by relationship or otherwise, is the natural or proper custodian of such insane person. But the one who does so restrain has the burden to justify his conduct by proof of every fact called for by the rule.

*Appeal from Jasper District Court.*—HENRY SILWOLD, Judge.

MAY 15, 1920.

ACTION to recover damages for alleged false arrest and imprisonment. Verdict for the defendant. Plaintiff appeals.—*Reversed and remanded.*

*Holly & Holly* and *Campbell & Campbell,* for appellant.

*J. E. Cross* and *C. O. McLain,* for appellee.

GAYNOR, J.—This action is to recover damages for an alleged false arrest and imprisonment. The plaintiff and the defendant are father and son. At the time of the happening of the matters herein complained of, plaintiff was about 78 years of age. He complains that, on or about the 18th day of October, 1916, his son, the defendant, without probable cause for believing there was any necessity therefor, maliciously caused him to be arrested by the sheriff of Jasper County, and transported in an automobile to the defendant's home, and from thence to the Soldiers' Home at Marshalltown. There is no dispute in the evidence that, on or about the date alleged, the defendant caused the sheriff of Jasper County to take plaintiff into his custody, and transport him to the Soldiers' Home at Marshalltown; that the sheriff did take possession of plaintiff's person, against his will, and did transport him to the Soldiers' Home at Marshalltown, and left him there, free to remain or leave; that he voluntarily remained a few days, and then returned to his home.

The defendant urges in justification that the plaintiff was of unsound mind, suffering from delusions which involved him in a state of mental uncertainty as to the true relationship which existed between himself, the members of his family, and the world; that these delusions consisted of an unfounded belief that members of his family were persecuting him in various ways, without cause; that he had important rights of action against persons, especially members of his own family, which must be preserved and real-

ized upon through extensive litigation; that these delusions, operating upon his mind, led him to walk and ride about the country, seeking evidence of his imaginary wrongs; that these excursions exposed him to all kinds of inclement weather, and endangered his health and life; that, in these migrations through the country, he threatened various parties with litigation and with physical violence, without having any rational reason therefor, and without any basis in fact for his conduct; that, in fact, the disordered condition of his mind rendered him dangerous to himself and to others; that the defendant, being the son of the plaintiff, and noting the danger to which he was exposing himself and the peril to others involved in his conduct, caused the said sheriff to come to plaintiff's home and take him into custody, but only for the purpose of returning him to the Soldiers' Home at Marshalltown, at which place he had previously been on his own initiative; that the only thought and purpose of the defendant in the matter was to change the surroundings of the plaintiff, in the hope that a change would be beneficial to him, through rest and quiet, and to afford the public the protection it was justly entitled to.

The defense may be divided into two parts:

(1)   That the plaintiff was in such a condition of mind as rendered it unsafe for him to be at large, subject to the vagaries of his own mind; that he was, in fact, of unsound mind; that the restraint placed upon him was only such as was reasonably necessary to protect him from himself, and to protect the public from injury.

(2)   That the relationship existing between the plaintiff and the defendant was such that the defendant owed the plaintiff a moral and legal duty to exercise some supervision over him; that the condition of plaintiff's mind was such that he appeared to be in need of supervision, and restraint was necessary to that end; that, in doing what he did, he acted as a reasonably prudent person would act under like circumstances, honestly believing that the plaintiff was so mentally deranged as to be incapable of rational self-control, and that the best interests of the plaintiff and the pub-

lic required the action taken; and that what was done was without malice, and was done for the sole benefit of the plaintiff.

It will be noted that this second defense omits a charge of actual necessity for restraint. If the plaintiff was, at the time he was restrained, of unsound mind, and, by reason thereof, incapable of caring for himself, and incapable of exercising rational self-control, and this condition of mind imperiled his own safety, and rendered reasonable restraint necessary, to protect him from injury, or if, by reason of his mental condition, he was incapable of exercising rational self-control, and the lack of such power imperiled the safety of others, then one sustaining the relationship to him which this defendant sustained would be justified, under the law, in placing him under such restraint as was reasonably necessary to protect himself against himself, and to protect the public, from the dangers incident to his condition. Or, in other words, if the mental condition of the plaintiff was such that there was danger to himself or to others in permitting him to be at large, subject to the whims and caprices of an insane mind, then reasonable restraint would be justified, and would afford him no basis for complaint. We think the general rule is that, where it is made to appear that one is not capable of rational self-control, and, by reason thereof, his own safety or the public safety is imperiled, one who, by relationship or otherwise, is the natural or proper custodian of an insane person, may lawfully restrain him in some proper place for treatment, for the good of the patient or for the protection of the public; and this without warrant, and without judicial proceedings. The right to restrain an insane person is not governed by the general law, which provides that no one shall be deprived of life, liberty, or property without due process of law. Restraint under such conditions does not offend against the constitutional inhibition.

We find no authorities going so far as to say that one sustaining the close relationship which this defendant sustained to this plaintiff is not justified in temporarily re-

straining him of his liberty, when such restraint is made necessary for his own protection or the public safety. If this were the only question, and the record sustained the necessity for the restraint adverted to, we would have no hesitancy in affirming this case. For a full discussion of this phase of the question, see *Van Duesen v. Newcomer,* 40 Mich. 90, 127. In that case, Judge Cooley laid down the doctrine thus:

"The conclusion is that restraint of insane persons in an asylum is lawful, and, being lawful, the placing them there, whether it be done by way of protecting the persons or property of others, or for the benefit of the insane persons themselves, is, in itself, due process of law, though there may have been no judicial investigation whatever."

He further said:

"Insane persons are dangerous to others, from their propensity to commit mischief, which they are liable at any moment to manifest, though it may have never been exhibited before; and that, therefore, the state, through its organized action, or any member of the political society, without other warrant than the imperious law of self-defense, may restrain their actions, and, when no other restraint is provided, may properly remove them to the retreat the state has provided for their benefit."

Further:

"The helpless condition of insane persons, and the possibility of cure which is present in the early stages of most cases, imposes upon their relatives the solemn duty to take steps for their cure by placing them in the institutions specially provided for their treatment, and clothes them with all necessary power for the purpose, that they may restrain them of their liberty with a view to their cure, as they might a person in the delirium of fever, or one who, in any case of mere bodily disease, was in danger, either purposely or through ignorance or temporary loss of prudence and discretion, of inflicting or causing self-injury."

Quoting further from that opinion:

"The safety of society, it is said, does demand that every

insane person should be placed under restraint, because the going at large of every such person is dangerous to others; and, for self-protection, they may be restrained by others, without awaiting any judicial hearing. * * * For their own good, they should be restrained, in order that they may be treated for their malady, and, if possible, cured; and ·this should be allowed without a preliminary inquisition, because the inquisition itself must be exciting and injurious to the subject of it, and tend to defeat the very purpose for which it would nominally be had."

The consensus of judicial opinion seems to be that, while everyone is ordinarily entitled to direct his own actions, yet, where one is, in fact, insane, and there are manifest probabilities of injury to himself or the public, if he is permitted to go unrestrained, even though those have not been made manifest, he may be restrained by anyone for a reasonable time, in the interests of the public good. The authorities limit the right to restrain an insane person of his liberty to proof of actual insanity and immediate danger to himself or to the public, and they unite in holding that the right to restrain for his own benefit and for the protection of others is not questioned; but it is discussed as analogous to cases where one is in delirium of fever, and would break away from his attendants, or is afflicted with a contagious disease. As bearing upon this question, see *Colby v. Jackson,* 12 N. H. 526. In this case, it was said:

"Upon the obvious necessity of the case, if no authorities could be found, the original restraint of the plaintiff by the defendant was justifiable. There was evidence that the plaintiff, at the time of his confinement, was so insane that it would have been dangerous to himself and his family to permit him to be at large. If it be lawful 'to lay hands upon another,' to preserve public decorum; to imprison persons till their anger shall be cooled, lest they should kill each other; to break into a man's house and imprison him, lest he should murder his wife,—it was certainly lawful for the defendant to imprison the plaintiff, whose state of mind was such as to expose himself and those dependent upon

him to physical suffering, and perhaps to death. To do this, he needed no warrant; his duty as a citizen called on him to interfere, in a case of such extreme urgency. But when the immediate safety of the lunatic and his family had been cared for, the duty and right of interference by the defendant ended."

Where one restrains another of his liberty, he must justify his conduct, and he must show a legal right in him to do so. Under our statute, Section 5197 of the Code of 1897, a private person may make an arrest for a public offense committed or attempted in his presence. See *Snyder v. Thompson,* 134 Iowa 725. When a private person arrests another without a warrant, the burden rests upon him to show that a crime was committed or attempted in his presence by the party charged. Where a public offense is committed or attempted in the presence of a private citizen, the public interest demands, and the public good requires, that the citizens be invested with the right to restrain the defendant of his liberty; but, when called into court to answer for the arrest, the burden rests upon him to show that a public offense was actually attempted or committed in his presence. The right of one to arrest and restrain another of his liberty on the ground of insanity is dependent upon the existence of the fact upon which the right is predicated. A citizen has not the right to arrest any member of society who may be deranged in his mind; and, therefore, in order to justify his act, when charged with wrongful arrest, he must show, not only that the person was insane at the time, but also that to permit him to go at large imperiled his own safety or the safety of the public. It is not sufficient to show that he was lacking in mental capacity or had hallucinations, but the person causing the arrest must go further, and show that to permit him to go unrestrained imperiled his own safety or the safety of the public. It is not sufficient to show, in cases of this kind, that he had probable grounds for suspecting that the person arrested was insane, or probable reason for believing that his being at large would imperil the safety of the public. He must justify it

by proving the fact upon which his right to restrain rested. As said by Judge Cooley, in *Van Duesen v. Newcomer,* supra:

"Whoever takes into his own hands so serious a responsibility as the confinement of a citizen upon his own judgment merely, assuming it to be necessary in self-defense, must show that, upon the evidence, danger from his being at large was not merely possible, but was probable. Many sane persons, under the influence of strong excitements, are subject to serious and perhaps dangerous fits of passion; but another could not be allowed, on this ground alone, to seize and imprison them, in anticipation that possibly the occasion for excitement might arise, and the passion be manifested."

He further says:

"I concede that the right to restrain these unfortunate persons, for their own benefit or for the protection of others, is as clear as the right to restrain one who, in the delirium of fever, would break away from his attendants, or one who, with a contagious disease upon him, should attempt to enter a public assembly. But the first thing to be determined is whether there is insanity in fact."

This involves the necessity for restraint. One who arrests another and restrains him of his liberty, on the theory that he is incapable of rational self-control, assumes the burden of showing that fact, and the imminent necessity for the restraint. This, we think, is the true rule, and the sane and safe rule in matters of this kind.

There was a conflict in the evidence as to the fact of insanity, though we are inclined to think the preponderance of the evidence tends to show that the plaintiff was not possessed of a sane mind. That, however, was a question for the jury, and should have been submitted to the jury, under proper instructions. We are satisfied from this record that the defendant acted in good faith in what he did; that he had the best interests of his father at heart. We are, however, forced to order a retrial of this case, for error committed in giving the eighth instruction, which is as follows:

"If, in the judgment of the defendant at the time, the plaintiff had received such care at the hands of his children as they were able to give, or if the plaintiff would not stay with them or either of them, and had no suitable home of his own, but roamed around the neighborhood, or failed to take proper care of himself, and if defendant honestly believed plaintiff demented, and honestly believed and considered the Soldiers' Home at Marshalltown a proper place to care for the plaintiff, and if, in having plaintiff taken there, and the means adopted to that end, the defendant did not act maliciously toward the plaintiff, but acted with that care, caution, and prudence as would an ordinarily careful and prudent person, or if you find that, in what he did or had done for the plaintiff, the defendant had only his father's best interest at heart, and defendant was endeavoring to provide proper care for his father in his then condition, and that defendant honestly believed that the means and method adopted by him and by his agent, W. S. Gove, in getting the plaintiff to the Soldiers' Home, then, in doing what he did, defendant was acting within his right, and not illegally."

While a careful examination of this record leads us to think that there is but little merit in plaintiff's contention, yet the plaintiff was entitled to have the judgment of the jury, under proper instructions, upon the merits of his contention. This he did not have, with the instruction hereinbefore set out submitted to the jury, and for this reason the cause is—*Reversed and remanded.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.