Isaac Lewis WHITE, Petitioner,

v.

Curtis REID, Superintendent of the District of Columbia Jail, Respondent.

Isaac Lewis WHITE, Petitioner,

v.

Curtis REID, Superintendent of the District of Columbia Jail, and Carlton G. Beall, United States Marshal for the District of Columbia, Respondents.

Nos. 88–54, 108–54.

United States District Court
District of Columbia.

Dec. 15, 1954.

B. Michael Landesman, Washington, D. C., for petitioner.

Vernon E. West, Corp. Counsel, Milton D. Korman, Richard Barton, Asst. Corp. Counsel, Leo A. Rover, U. S. Atty., Oliver Gasch, Alexander L. Stevas, Asst. U. S. Attys., Washington, D. C., for respondents.

LAWS, Chief Judge.

This proceeding for writ of habeas corpus has been consolidated with Habeas Corpus No. 88–54, D.C., 125 F.Supp. 647, in which this Court discharged an earlier writ by petitioner, without prejudice to its being renewed unless the Attorney General of the United States within ten days had ordered petitioner transferred to the National Training School for Boys or to an institution with similar facilities. Within the limited period, the Attorney General ordered petitioner transferred to the Federal Correctional Institution at Ashland, Kentucky. Petitioner contends this institution is not a suitable place for his commitment within the meaning of this Court's opinion of November 23, 1954. In addition, petitioner claims his confinement is unlawful and unconstitutional arising out of a revocation of parole in which the United States Board of Parole is said to have acted arbitrarily, capriciously and illegally, and also on oral argument he alleges the proceedings before the Juvenile Court were so lacking in the observance of statutory requirements and basic rules of fair play as to constitute a denial of due process of law.

With respect to the proceedings before the Juvenile Court on August 15, 1952, when petitioner was committed to the National Training School for Boys until twenty-one years of age, the gravamen of the original petition was that the requirements of the Fifth and Sixth Amendments were binding upon the Juvenile Court in cases involving children as well as adults. This Court held that proceedings involving juveniles brought in the Juvenile Court are not criminal and penal in character, but are an adjudication upon the status of a child in which the state acts *in loco parentis*, so that Constitutional safeguards granted to one accused of crime are not applicable. Petitioner now urges that, granting Constitutional provisions may not be applicable, the particular proceedings involving this petitioner were not legally sufficient to bring about any restraint.

From the evidence adduced at the first hearing the Court concludes petitioner has failed to sustain his burden of proof. A formal petition was filed in Juvenile Court alleging that Isaac Lewis White and two other children used two automobiles without permission of the owners. Petitioner and his parents were not unacquainted with Juvenile Court procedures, both petitioner and his brother having been involved in earlier difficulties. Petitioner's brother had been represented by counsel at an earlier trial. There was testimony by a Juvenile Court probation officer, which the Court finds trustworthy, that he had advised petitioner and his parents of his right to have counsel. Petitioner himself has testified that the charges in a petition alleging unauthorized use of two vehicles were read to him, and when asked if they were true, answered "That's right." Petitioner now alleges he acknowledged only that he had been a passenger in the automobiles, and claims he did not know they were being used without permission of the owners. If this argument is to be considered, the

proceedings in the Juvenile Court having been regular and in conformity with law, petitioner's remedy is by application to the Juvenile Court to vacate the order of commitment, not by resort to habeas corpus in this Court. Petitioner has failed to overcome the presumption of regularity that judges obey the law and will protect fully the rights of the parties appearing before them and that judicial proceedings have conformed with due process of law.

■ With regard to the allegations concerning the revocation of parole, assuming, without deciding, that the action of the United States Board of Parole is subject to judicial review as petitioner contends,[1] no evidence has been introduced to support the allegations the Board acted arbitrarily, capriciously or illegally in revoking parole. The Court finds no merit in this contention.

In its earlier opinion of November 23, 1954, the Court held that a juvenile, properly held in jail for a time under criminal charges, may be further held there based on an order of commitment of the Juvenile Court pending determination of the institution to which he should be transferred, provided the determination is made with reasonable dispatch. At that time, no designation having been made, the Court would not speculate on the institution which might be named. It is now agreed that the Federal Correctional Institution at Ashland, Kentucky, hereinafter sometimes referred to as Ashland, has been designated by the Attorney General.

Ashland, which was formerly an institution designed for the imprisonment of short-term criminal offenders of the non-habitual type, was designated by the Attorney General in January, 1954, as a Classification Center and treatment facility for youthful offenders under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq. The Act was the result of study by the Committee on Punishment for Crime of the Judicial Conference of the United States, appointed in 1941 by the Chief Justice of the United States. It was intended to provide a flexible rehabilitation program for selected youthful offenders amenable to treatment based on the Borstal system in England and similar programs in five States of the Union. See S.Rep. 1180 (81st Cong., 1st Sess.); H.Rep. 2979 (81st Cong., 2d Sess.); Report to the Judicial Conference of the Committee on Punishment for Crime, June 1942. The plan is for a full day of active work and recreation, individualized study and training based on the physical, physiological and social characteristics of the youth, and personal interest and attention by a trained staff.

From the certification by the Attorney General under 18 U.S.C. § 5012, and from testimony presented at this hearing by the Superintendent of the National Training School for Boys and also the Director of the Federal Bureau of Prisons, the Court finds that the facilities at Ashland are comparable and in some respects superior to those of the National Training School for a person of petitioner's age and condition. The National Training School is adapted to the training of boys between 13 and 18 years of age, with an average age of slightly less than 16 years at time of commitment. The program of the School emphasizes academic education and pre-vocational training. Ashland on the other hand, as a Youth Correction center, is an institution primarily for youths between 18 and 24 years of age, so that vocational training is more intensive and advanced and there is less attention to a formal education. The physical plant, equipment and personnel tend to be substantially equivalent to that of the School except in some respects there are more strict restraints provided. The degree of supervision, the

---

1. Compare Nave v. Bell, 6 Cir., 1950, 180 F.2d 198, with United States ex rel. De Lucia v. O'Donovan, 7 Cir., 1949, 178 F.2d 876. See 29 A.L.R.2d 1074 (Note).

extent to which the youths are immunized from contacts with the surrounding community, and the nature of the visitation and package privileges permitted may vary according to the degree to which they are best adapted to training and discipline without material significance in indicating the nature of the commitment.

But another question of primary importance is whether the designation of Ashland for an alleged parole violator from the Juvenile Court of the District of Columbia is unconstitutional or illegal because it is a place of confinement for those convicted of crime. It must be decided whether a juvenile committed under civil or equitable proceedings may be sent to mingle with those convicted of crime.

▬▬ A study of legislative history and statutory provision indicates the purpose of the Federal Youth Corrections Act, for which Ashland is a classification center and treatment facility, is to rehabilitate youths regularly convicted of crime who show promise of becoming useful citizens by providing a new alternative sentencing and treatment procedure. See H.Rep. 2979 (81st Cong., 2d Sess.); S.Rep. 1180 (81st Cong., 1st Sess.). The purpose of the Juvenile Court Act of the District of Columbia, on the other hand, is the promotion of the child's welfare and the state's best interests by the strengthening of family ties where possible, and, when it is necessary to remove the child from custody of his parents for his welfare or the safety or protection of the public, securing for him custody, care and protection as nearly as possible equivalent to that which should have been given him by his parents. D.C.Code, § 11–902. It extends not only to those who have violated the law, but also includes the truant, the abandoned, the home-

less, the neglected. D.C.Code, § 11–906. When removal from the parents' custody is required, there is provision not only for commitment to the National Training School, but also probation or supervision, commitment to a qualified suitable private institution or agency, or such further disposition as may be for the best interests of the child. D.C.Code, § 11–915. The proceedings are not criminal or penal, but are an adjudication upon the status of the child. *Ibid.* In short, the spirit of the Act is the child's welfare under the protection of parents, whether natural parents or the state acting as *parens patriae*.

It appears that the purpose of the Federal Youth Corrections Act is to keep the Juvenile Court of the District of Columbia entirely separate. When the Act was made applicable to the District of Columbia, it was specifically provided in 18 U.S.C. § 5023(c), that nothing in the Act shall be construed in any wise to amend, repeal or affect the provisions of the Juvenile Court Act. The Youth Corrections Act further provides that insofar as practical, its institutions and agencies shall be used only for treatment of committed youth offenders, who shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment. 18 U.S.C. § 5011.

Procedures under the Juvenile Court Act of the District of Columbia, D.C. Code, § 11–901 et seq., which was completely revised in June, 1938, may be contrasted with procedures under the Federal Juvenile Delinquency Act, § 5031 et seq.,[2] enacted the same month. Without deciding whether youths committed under the latter Act may be transferred to institutions such as Ashland, important differences may be

---

2. The Federal Juvenile Delinquency Act contained a saving clause providing that the Act shall not be construed to supersede or repeal any provision of law relative to the custody, care, subsistence, education, or training of juveniles par-

ticularly applicable to the District of Columbia. Act of June 16, 1938, § 8, 52 Stat. 766. For some reason this section, codified as 18 U.S.C. § 928 (1946 Ed.), was omitted when Title 18 was recodified in 1948.

noted, among them: (1) The juvenile is tried in the United States District Court, which has jurisdiction to try the substantive offense; (2) Constitutional safeguards guaranteed one accused of crime are preserved, the Act requiring affirmative consent by the juvenile (see Holtzoff, The Purposes and Constitutionality of the Federal Juvenile Delinquency Act, address before the Judicial Conference for the Fourth Circuit, 84 Cong.Rec.Appendix, pp. 3289–3291); (3) The Court is required to apprise the juvenile fully of his rights and the consequences of his consent; (4) The Attorney General may expressly direct the juvenile may not be proceeded against as a juvenile delinquent; (5) There are no provisions for secrecy of records, but proceedings are without jury and may be had in chambers; (6) The commitment may not exceed the term which might have been imposed had the juvenile been tried and convicted of the substantive offense. In contrast, while the Juvenile Court Act applicable to the District of Columbia provides, D.C.Code, § 11–915, that cases involving children may be heard by jury upon demand by the child, his parent, or guardian or the Court, since the proceedings are not criminal in nature, and the Court being without jurisdiction to try the juvenile as an accused criminal, the strict requirements of criminal trials under the Constitution are neither required nor observed.

■ This does not mean there is no adequate discipline available when a juvenile in the District of Columbia over the age of 16 years has violated the law. The Juvenile Court, after full investigation, may waive jurisdiction over such a juvenile when he is charged with an offense which would amount to a felony in the case of an adult, or over any child charged with an offense which if committed by an adult is punisha-

ble by death or life imprisonment. D.C. Code, § 11–914. In such a case, this Court will try the case according to Constitutional procedures. It then may proceed under any applicable law relating to the offense, or sentence the youth offender to the custody of the Attorney General for treatment and supervision under the Federal Youth Corrections Act. Thus, where investigation by the Juvenile Court has disclosed that a juvenile who has committed a felony requires training and discipline which the natural parent, the state *in loco parentis*, or a guardian cannot furnish, this Court, as the Court duly constituted to try felonies, has available a broad and flexible range of remedies for the care and custody of the juvenile over 16 years of age.

■ The Court, accordingly, concludes that both Constitution and statute forbid the transfer of a youth committed under the Juvenile Court Act to any institution designed for the custody of persons convicted of crime, inluding the Federal Correctional Institution at Ashland, Kentucky, and the commingling of such juveniles with criminals.

Because petitioner now has been held in jail for an undue length of time, the Court will order him released from custody, without prejudice to designation of the National Training School for Boys or a similar institution not designed as a place of confinement for those convicted of crime and where petitioner may not have contact or communication with those convicted of crime. In the event any designation is made of a place other than the National Training School for Boys, notice should be forthwith given counsel for petitioner and transfer postponed for 24 hours thereafter so as to permit orderly presentation of a petition for a further writ of habeas corpus. Counsel will submit order to this effect.