JOHN ROSE, appellant, v. C. H. HAUGH, warden, Men's Reformatory, Anamosa, Iowa, appellee.

No. 52145.

JANUARY 10, 1967.

Robert H. Storey, of Anamosa, for appellant.

Robert R. Beckman, County Attorney, Robert Bernstein and Michael McCauley, Assistant Attorneys General, for appellee.

MOORE, J.—In December 1960 plaintiff, while under indictment for murder, pleaded guilty to manslaughter and was sentenced to eight years in the men's reformatory at Anamosa. The victim was his father. During his sentence, the Board of Control caused him to be examined and he was found to be mentally ill. On July 10, 1963, plaintiff was transferred, in accordance with Code section 246.16, to the department for the mentally ill at the reformatory where he remained until the expiration of his sentence on February 18, 1965.

Shortly before the expiration of his sentence the board again caused plaintiff to be examined. It was the consensus of opinion of six psychiatrists who had examined him on three different occasions the plaintiff, "because of his paranoid ideation, is extremely dangerous and has a high potential for violence toward others and constitutes a danger to society to a degree that he should not be released from the security hospital at the expiration of sentence."

Following the psychiatrists' report the Board of Control, acting under the provisions of Code section 246.17, ordered that upon expiration of his sentence plaintiff be further confined to the security hospital until he recovered or was otherwise legally released.

Plaintiff appealed this decision and order by a civil proceeding authorized under Code section 229.17 and on March 1, 1965, a jury returned this verdict: "We, the jury, find the appellant, John A. Rose, is presently mentally ill." After this finding he was returned to the department for the mentally ill at the reformatory where he was confined at the time of hearing of this habeas corpus case.

Plaintiff's petition for writ of habeas corpus, filed in July

1965, alleges Code section 246.17 is unconstitutional and that his detention in the department for the mentally ill at the reformatory is illegal. It asks he be discharged and transferred to a state mental health institution.

Following a prolonged hearing, at which plaintiff was ably represented by his court-appointed counsel, the trial court filed detailed and well prepared findings of fact and conclusions of law. Plaintiff was denied the relief sought and has appealed.

Section 246.17, Code 1962, 1966, provides: "Discharge of mentally ill. When the board has reason to believe that a prisoner in the penitentiary or said reformatory, whose sentence has expired, is mentally ill, it shall cause examination to be made of such prisoner by competent physicians who shall certify to the board whether such prisoner is in good mental health or mentally ill. The board may make further investigation and if satisfied that he is mentally ill, it may cause him to be transferred to one of the hospitals for the mentally ill, or may order him to be confined in the department for the mentally ill at the reformatory."

Plaintiff's attack is directed primarily to the provisions of the last sentence of this section. He asserts the statute is unconstitutional for the reason it permits a person restrained of his liberty by civil procedure to be imprisoned within the walls of a penal institution or prison and thus deprived of due process.

In Hiatt v. Soucek, 240 Iowa 300, 36 N.W.2d 432, we held the summary or ex parte procedure provided for in section 246.17 is not in violation of the due process clause of the constitution since a right of appeal to the district court is granted by other sections of the Code. After a review of the duties owed by the State we upheld transfer of one found insane at the expiration of his sentence in the reformatory to the Cherokee State Hospital. We did not, however, decide the question here presented.

Plaintiff is a civilly committed mental patient and his restraint is not designed as punishment for any act done. He is in the care and custody of the State for treatment of his unfortunate infirmity. The constitutional provisions relating to due process are not applicable to a person restrained as insane.

County of Black Hawk v. Springer, 58 Iowa 417, 418, 10 N.W. 791, 792, 793; Peff v. Doolittle, 235 Iowa 443, 454, 15 N.W.2d 913, 918.

Maxwell v. Maxwell, 189 Iowa 7, 10, 177 N.W. 541, 543, 10 A. L. R. 482, states: "The right to restrain an insane person is not governed by the general law, which provides that no one shall be deprived of life, liberty, or property without due process of law."

With these principles plaintiff does not disagree but contends due process of law which is required under both the United States (Amendment 14, section 1) and Iowa (Article I, section 9) Constitutions is denied when a civilly committed mentally ill person is detained in a prison or institution used for the confinement of convicted criminals. He cites and relies heavily on In re Maddox, 351 Mich. 358, 88 N.W.2d 470, and White v. Reid, D. C., 126 F. Supp. 867. Both hold transfer of a civilly committed person to a prison violates due process.

Plaintiff argues he is confined to a prison in violation of his constitutional rights guaranteed in Article I, section 10, Iowa Constitution, which provides:

"In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right to a speedy and public trial by an impartial jury; to be informed of the accusation against him, to have a copy of the same when demanded; to be confronted with the witnesses against him; to have compulsory process for his witnesses; and, to have the assistance of counsel."

Defendant distinguishes the Maddox and Reid cases on the facts and points out the department for the mentally ill at the reformatory is a hospital which the State has established by the duty of parens patriae and in the exercise of police power to retain and treat dangerous mental patients.

Much of the record is devoted to a showing plaintiff's place of confinement is in fact a hospital and not a penal institution. The trial court found it is a hospital and therefore plaintiff had not been denied due process.

Code section 246.15 requires the maintenance of this mental hospital at the reformatory and in several other sections it is

labeled "department for mentally ill". Code sections 783.3, 783.4 and 783.5 refer to it as "department for the criminal insane". It is labeled "the hospital unit for the mentally ill" in Code section 218.92. Commitments under Code section 785.19 are to "the insane hospital". The Board of Control, defendant-warden, the superintendent of this hospital, and others refer to it as "the security hospital". The trial court in his findings and conclusions adopts and uses this nomenclature.

The evidence is in little dispute. The record amply supports these findings by the trial court.

"8. Petitioner, at the time of hearing in this case, October 20, 1965, was still mentally ill, still dangerous, still had a potential for violence toward others, and still constituted a danger to society, although his condition has somewhat improved in recent months.

"9. The Men's Reformatory at Anamosa is a penal institution, and the respondent is the warden of that institution.

"10. The Security Hospital is a part of the Men's Reformatory and, like the rest of the Reformatory, is under the general control and authority of the respondent warden. The actual management and operation of the Security Hospital, however, is under the control of its Superintendent, Doctor Hege, a psychiatrist. In the minds of Doctor Hege, Mr. Russell Wilson, Chairman of the Board of Control, and others, the Security Hospital is a hospital, and not a prison. Petitioner himself testified that the Security Hospital is a 'hospital'. The inmates are treated as patients, not as prisoners.

"11. The Security Hospital is physically separated from the rest of the Men's Reformatory by a twenty-five foot high stone wall.

"12. Except for a small handful of severely regressed individuals, the inmates of the Security Hospital are quartered in a large 40-bed dormitory-type ward, and not in cells. Petitioner himself testified that this ward is 'quite modern. It's quite attractive. They keep it quite clean and they see to it that everything looks quite nice.' The hospital inmates pretty much have complete freedom of the hospital, including indoor and outdoor recreational areas.

"13. The Security Hospital is a maximum security hospital. Although the inmates enjoy considerable freedom of mobility within the hospital building and grounds, the periphery of the hospital area is securely guarded by high walls, bars on windows, and armed guards. This security prevents escape.

"14. There are no other maximum security hospitals in Iowa at the present time. If petitioner were placed in any of the State's Mental Health Institutes, he could escape, and he probably would. The only way he could be prevented from escaping from a Mental Health Institute would be to convert a room into a barred cell and keep him in it. Such confinement of petitioner would undoubtedly result in his rapid and total mental regression.

"15. The primary goal to be served by the Security Hospital is the protection of society from dangerous mentally ill persons. The secondary goal is to provide the patients with good psychiatric treatment. In the opinion of this Court, both goals are well served. Neither goal could be well served if dangerous mentally ill persons were committed to mental hospitals which are not maximum security, for the reasons pointed out in the preceding paragraph. Also coping with dangerous mentally ill persons in a Mental Health Institute would adversely affect the Institute's therapeutic program for the rest of the patients. * * *

"17. On September 28, 1965, * * * the Board of Control passed a resolution providing * * * that civilly committed patients be subject only to the rules and administrative procedures promulgated by the Superintendent of the Security Hospital. Pursuant to this resolution, the changes called for are now being effectuated—no more 'mugging' or fingerprinting; no more prison numbers; and Hospital, rather than prison, rules and procedures now apply. In essence, the Security Hospital is being separated from the most of the Reformatory as much as is humanly possible under the circumstances.

"18. The Iowa legislature has appropriated $2,605,000 for construction of a new maximum security mental hospital to be constructed at Oakdale, far from any penal institution. It is anticipated that this new hospital will be ready for occupancy

in the summer or fall of 1967. Present plans are to move the Security Hospital staff intact to the new hospital. Patients such as petitioner would be committed to this new hospital for security and treatment. House file 684, Acts of the 61st G. A.

"19. Transfer of petitioner to a Mental Health Institute would create a clear and present danger to society, because of his potential for escape and violence to others."

■ We have uniformly held the trial court's findings in a habeas corpus action not involving custody of a child are binding upon us if supported by substantial evidence. Birk v. Bennett, 258 Iowa 1016, 1019, 141 N.W.2d 576, 578; Herold v. Haugh, 259 Iowa 667, 669, 145 N.W.2d 657, 659, and citations. The above findings are well supported by the record.

■ The department for the mentally ill at the reformatory being a security hospital and not a penal institution plaintiff's attack on the constitutionality of Code section 246.17 necessarily fails. We find no basis for changing our holding in Hiatt v. Soucek, supra, 240 Iowa 300, 36 N.W.2d 432. It is well supported by Baxstrom v. Herold, 383 U. S. 107, 86 S. Ct. 760, 15 L. Ed.2d 620, decided February 23, 1966.

We, like the trial court, express the hope plaintiff and other such patients will within the next few months be transferred to the new maximum security mental hospital now under construction at Oakdale near Iowa City.

The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.