## IN THE COURT OF APPEALS OF IOWA

No. 20-0345
Filed December 16, 2020

**IN THE MATTER OF THE GUARDIANSHIP OF S.P.-G.,**

**B.G., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Benton County, Cynthia S. Finley, District Associate Judge.

A father appeals the juvenile court's denial of his motion to terminate a guardianship to his child. **AFFIRMED.**

James Affeldt and Daniel Gough (until withdrawal) of Elderkin & Pirnie, PLC, Cedar Rapids, for appellant father.

Ray Lough, Vinton, guardian ad litem for minor child.

Jennifer L. Zahradnik, Belle Plaine, for appellee guardian.

Considered by Bower, C.J., and May and Ahlers, JJ.

**MAY, Judge.**

A father appeals the juvenile court's denial of his motion to terminate a guardianship to his child, S.P.-G. We affirm.

**I. Facts and Prior Proceedings**

The father and mother divorced in 2011, when S.P.-G. was two years old. The district court granted the mother physical care of their children, S.P.-G. and G.P.G.[1] The children remained in contact with the father through visitations lasting a few hours on weekends. But the children never stayed overnight with him after the parents divorced. And their mother was always present.

In March 2018, the mother was diagnosed with cancer. In May, she notified the father of her terminal prognosis. As the mother's health deteriorated, S.P.-G.'s best friend's mother, M.M., stepped in to help care for S.P.-G. Then S.P.-G.'s mother passed away in October.

After the mother's passing, S.P.-G. moved in with M.M. And M.M. approached the father about establishing a guardianship. The father consented to a guardianship with M.M. serving as S.P.-G.'s guardian. He continued to visit with S.P.-G. as he had done when the mother was alive.

Then, in August 2019, the father moved to terminate the guardianship. The matter came before the juvenile court in February 2020. Following the hearing, the court denied the father's motion to terminate the guardianship. He appeals.

---

[1] G.P.G. has since reached the age of majority.

**II. Standard of Review**

Actions to terminate guardianships are equitable in nature. *In re Guardianship of B.J.P.*, 613 N.W.2d 670, 672 (Iowa 2000). And we review equitable actions de novo. Iowa R. App. P. 6.907. We give weight to the factual findings of the district court, but we are not bound by them. *In re Guardianship of Stewart*, 369 N.W.2d 820, 822 (Iowa 1985).

**III. Discussion**

On appeal, the father challenges the juvenile court's determination that the guardianship should not be terminated.

We first note recent changes to our guardianship statutes. The Iowa Minor Guardianship Proceedings Act created "[c]hapter 232D and transferred jurisdiction of guardianships for minors to the [j]uvenile [c]ourt." 2 Marlin M. Volz, Jr., Iowa Practice Series: Methods of Practice § 28:1 (Aug. 2020 update). The Act went into effect on January 1, 2020, and applies retroactively. *Id.* So, like the juvenile court, we apply chapter 232D (2020). We find its meaning in its words. *See Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019).

Iowa Code section 232D.503 governs the termination of guardianships.[2] Subsection 232D.503(2) provides that, when a guardianship is established with parental consent, it shall be terminated

> if the court finds that the basis for the guardianship set forth in section 232D.203[3] is not currently satisfied **unless** the court finds that the termination of the guardianship would be harmful to the minor **and** the minor's interest in continuation of the guardianship outweighs the

---

[2] Section 232D.503 also governs modification of guardianships.
[3] Section 232D.203 details the requirements for a guardianship established with parental consent.

interest of a parent of the minor in the termination of the guardianship.

(Emphasis added.)[4]

Section 232D.203 requires the parent's consent to create a guardianship. *See* Iowa Code § 232D.203(1)(a). So, when the parent revokes their consent, "the basis for the guardianship set forth in section 232D.203 is [no longer] satisfied." *See id.* § 232D.503(2). When that occurs, subsection 232D.503(2) requires termination of the guardianship unless (1) termination would be harmful to the child and (2) the child's "interest in continuation of the guardianship outweighs the interest of a parent." *Id.*

---

[4] The district court and the parties also refer to subsection 232D.503(3). It provides:

> The court shall terminate a guardianship established pursuant to section 232D.204 if the court finds that the basis for the guardianship set forth in section 232D.204 is not currently satisfied. A person seeking termination of guardianship established pursuant to section 232D.204 has the burden of making a prima facie showing that the guardianship should be terminated. If such a showing is made, the guardian has the burden of going forward to prove by clear and convincing evidence that the guardianship should not be terminated.

Iowa Code § 232D.503(3).

By its terms, subsection 232D.503(3) applies only to "a guardianship established pursuant to section 232D.204." And section 232D.204 only deals with guardianships established "*without the consent* of the parent." (Emphasis added.) But this case deals with a guardianship established *with* the parent's consent. So subsection 232D.503(3) does not govern. We do not apply its burden of proof or its burden shifting scheme. Instead, we focus wholly on subsection 232D.503(2).

The father suggests that confusion over the proper standard justifies remand to the district court. We disagree. Because our review is de novo, we do not need to remand unless our record is not sufficiently developed to apply the proper standard. *See In re A.J.M.*, 847 N.W.2d 601, 608 (Iowa 2014) (Zager, J., dissenting) ("[W]hen vested with de novo review authority and confronted with a complete record, we have resolved the issue before us without remanding, even when the case required us to consider a district court's interpretation of a statute."). No party suggests the record is incomplete. So we apply the correct standard to the present record. *Cf. id.*

Here, the father revoked his consent to the guardianship. So we must ask (1) whether termination of the guardianship would be harmful to S.P.-G. and (2) whether S.P.-G.'s interest in continuing the guardianship outweighs the father's interest in terminating. *See id.* For purposes of analysis, we break these issues down further into four inquiries: (1) Would termination be harmful to S.P.-G.?[5] (2) What is the father's interest in terminating the guardianship? (3) What is S.P.-G.'s interest in continuing the guardianship? (4) Does S.P.-G.'s interest in continuing the guardianship "outweigh" the father's interest in terminating the guardianship?

**A. Harm to S.P.-G.**

We begin by asking whether "the termination of the guardianship would be harmful to the minor." *Id.* Upon consideration of the record evidence, we agree with the juvenile court that termination of the guardianship would be harmful to S.P.-G.

S.P.-G. has developed a strong bond to M.M. and refers to her as "mom." G.P.G. testified that terminating the guardianship would be tantamount to S.P.-G. losing her mother a second time. And S.P.-G. understandably had difficulty opening up to others following her mother's death. But, as G.P.G. testified,

---

[5] By way of conscious repetition, though, where (as here) a guardianship was established by parental consent but the parent later withdraws consent, subsection 232D.503(2) *requires* termination of the guardianship *unless* it "would be harmful to the minor *and* the minor's interest in continuation" outweighs the parent's interest in termination. (Emphasis added.) So, if we do not find termination "would be harmful to the minor," our analysis is complete, and we must require termination. Conversely, if we find termination "would be harmful," we then proceed to the other areas of inquiry (i.e., the relative interests of the child and parent) before determining whether termination is required.

"[d]uring her time with [M.M.'s family], . . . she has blossomed." We attribute this in part to S.P.-G.'s ability to trust M.M. as well as M.M.'s efforts to attend to S.P.-G.'s emotional needs. M.M. recognized S.P.-G.'s need to talk with a counselor and found one for S.P.-G.

Conversely, the father questions whether S.P.-G. really needs to see a counselor—although he never contacted the provider to investigate the need. Moreover, the father historically has done little to support S.P.-G. during emotionally fraught times. As the mother's health declined, he did not make himself more available to S.P.-G. as her needs increased. And he did not provide her with emotional support when the mother passed away. Instead, he relied on M.M. to meet S.P.-G.'s needs. And moving forward, it is of particular concern that the father questions whether S.P.-G.'s relationship with her mother was particularly close. We question whether he appreciates the loss S.P.-G. will continue to experience, and the corresponding emotional support she will require, as she reaches life's milestones without her mother.

In short, when we compare the father's minimal insight into S.P.-G.'s emotional health and needs with M.M.'s history of understanding and meeting S.P.-G.'s needs, we conclude termination of the guardianship with M.M. "would be harmful." *Id.*

Before moving on, though, we address the father's concerns about the statutory phrase "would be harmful." *Id.* The father suggests we should interpret this phrase to require harm that is both "imminent" and "intolerable." We disagree. "If the legislature intended" subsection 232D.503(2) to require harm that is "imminent" or "intolerable," the legislature "could easily have so stated." *See*

*Hansen v. Haugh*, 149 N.W.2d 169, 172 (Iowa 1967). It did not. And we are "constitutionally prohibited" from revising statutes. *See id.* (noting "[i]t is not the function of courts to legislate and they are constitutionally prohibited from doing so" (citing Iowa Const. art. III, § 1)). Rather, following the simple language chosen by the legislature, we conclude termination "would be harmful" to S.P.-G. because it would lead to harm.

### B. The father's interest

We next identify the nature of "the interest of a parent of the minor in the termination of the guardianship." Iowa Code § 232D.503(2). Here, the father relies on Iowa's "long standing public policy that, absent a powerful countervailing interest, a parent should always have the right to raise his/her child."[6]

### C. S.P.-G.'s interest

We next identify the nature of S.P.-G.'s interest. The parties appear to agree that, for purposes of subsection 232D.503(2), "the minor's interest in continuation of the guardianship" depends on the degree to which termination of the guardianship would be contrary to S.P.-G.'s best interest.[7]

---

[6] In his reply brief, the father mentions a "constitutional basis" as well. "Generally, we will not consider issues raised for the first time in a reply brief." *Villa Magana v. State*, 908 N.W.2d 255, 260 (Iowa 2018). And the father has identified no relevant exception. *See id.* (noting there are exceptions to the general rule). In any event, the father's reply brief does not suggest that a constitutional argument would require a different analysis. So we need not address the issue further.

[7] We acknowledge the precise phrase "best interest" does not appear in subsection 232D.503(2) although it does appear elsewhere in chapter 232D—even in subsection 232D.503(4). In other circumstances, this could give us pause. But we can see no practical difference between (1) the measure of a child's "interest" in continuing a guardianship and (2) a measure of the extent to which a guardianship is in the child's "best interest." The parties do not suggest otherwise.

**D. Weighing the interests**

Having identified the interests at issue, we now must weigh them against one another. As subsection 232D.503(2) puts it, we must decide whether "the minor's interest in continuation of the guardianship outweighs the interest of a parent of the minor in the termination of the guardianship."

We acknowledge that, as a matter of law, a father has a strong interest in parenting his biological child. For reasons already mentioned, though, we believe S.P.-G.'s current interest in maintaining the guardianship carries more weight.

We focus on two main considerations. First, while we do not presume to measure the father's love for S.P.-G., the father's objective actions do not demonstrate a robust parent-child relationship with S.P.-G. Since the parents divorced in 2011, S.P.-G. has not spent a night in her father's care.[8] Rather, throughout that nine-year period, the father's relationship with S.P.-G. has been largely limited to that of a dinner companion. And when S.P.-G.'s mother died and she had no other parent to turn to, the father declined to parent her even when others offered to assist him.

Conversely, S.P.-G.'s relationship with M.M. is very important to S.P.-G.'s well-being. M.M. has cared for S.P.-G. through the most harrowing period of her young life. M.M. provides her with a critical sense of security, structure, stability, and belonging. It is not in S.P.-G.'s best interest to suddenly and permanently

---

[8] G.P.G. testified the father was with her and S.P.-G. when they attended a dance competition in Wisconsin in 2018. However, the father did not mention this trip when he testified about whether he cared for the children overnight. So we are left to wonder if S.P.-G. was functionally in G.P.G.'s care on the Wisconsin trip.

sever her relationship with M.M. so that S.P.-G. can go live with a father who has not even cared for her overnight since 2011, when S.P.-G. was just two years old.

Based on these circumstances, we conclude S.P.-G.'s "interest in continuation of the guardianship" with M.M. "outweighs the interest of" the father "in the termination of the guardianship" at this time. *See id.* Accordingly, we conclude subsection 232D.503(2) does not require termination of the guardianship at this time.

We emphasize "at this time." We are not saying the father could not eventually offer S.P.-G. the same kind of support she now receives through the guardianship. He has just not taken the steps to do so yet. We encourage the father to get to know S.P.-G. better as a parental figure. And we encourage M.M. to facilitate the father's efforts.

## IV. Conclusion

We agree with the juvenile court that the guardianship should not be terminated at this time.

**AFFIRMED.**